[Crim. No. 3853. In Bank.—August 1, 1935.]

THE PEOPLE, Respondent, v. GEORGE HENDERSON, Appellant.

Willis O. Tyler and Sylvester Isonberg for Appellant.

U. S. Webb, Attorney-General, and Bayard Rhone, Deputy Attorney-General, for Respondent.

PRESTON, J.—Appeal from judgment entered upon jury verdict convicting defendant of the crime of contributing to the delinquency of a minor by giving her intoxicating liquor. Appellant urges insufficiency of the evidence to support the verdict and prejudicial error and misconduct alleged to have occurred during trial of the cause and in connection with charging the jury. It is unnecessary to pass definitely upon the first contention as said error, which under other circumstances might be nonprejudicial, may well have swayed the conclusions of this jury in view of the conflicting evidence and its doubtful sufficiency to warrant a conviction. The following is a *résumé* of some 200 pages of testimony taken on the trial.

The complaining witness was a Mexican high school girl, approaching 16 years of age, who resided at 1459 East 18th Street, Los Angeles, some five blocks from the general dry goods store and postoffice operated by defendant, a middle-aged negro. Her story is that she had known the store, and defendant in connection therewith, for some two years; that on the afternoon of December 24, 1933, she left home with a man in a Ford car, a friend of her mother, who dropped her off at the home of a girl friend a few blocks away; that at the latter place nobody was home, so she left and walked to defendant's store, arriving shortly after 3 o'clock; that he was alone, as he had been on previous occasions when she

patronized the store; that she asked to look at dresses; that while she was looking a man customer came in, was waited on and left; that defendant offered her a dress cheap; that he then gave her a quarter and asked her to buy him a bottle of gingerale; that she went across the street and made the purchase; that when she told who it was for, the lady did not require her to pay a deposit on the bottle; that she returned and gave defendant the change and the gingerale; that she then resumed discussion of the purchase of a dress; that he insisted and practically forced her to drink a mixture of the gingerale and some other liquid; that altogether she had three glasses; that during this period, the above-mentioned man customer again came in the store and talked for some minutes with defendant; that she finally completed her purchase but became dizzy and fell on her knees, whereupon defendant hit her and in a daze she ran from the store and walked along the street, remembering no more until after she was taken from her home some hours later to police headquarters and a doctor.

The above-mentioned man customer was a police officer in plain clothes. He testified that he saw complainant on both visits to the store; that the first time she was looking at a dress; that he stayed four or five minutes; that some three or four minutes later, a little after 4 o'clock, he returned and as he entered the door he noticed the girl going up to her mouth with her left hand, having some kind of liquid in a glass or bottle; that he left very soon; that on both occasions defendant was leaning back near the cash register, well away from the girl; that on the second visit the dress was on the counter with wrapping paper and cord; that there were also on the counter a number of bottles of hair oils, toilet waters, cosmetics, lotions, etc., and the girl was standing near the portion of the counter where the bottles were.

The owner of the store across the street from defendant's place testified to purchase of a bottle of gingerale by complainant between 2 and 3 o'clock and stated that later she went after the bottle, having taken no deposit on it; that as she was about to enter defendant's store someone stopped her on the street and while she was talking, she felt the empty bottle put in her hand by another person, by whom she did not notice.

Complainant's sister testified that complainant returned home about 6 P. M. To various persons she said that she heard an automobile draw up, and then complainant came in but she later testified that complainant was walking. At any rate, she said that complainant was not herself, was wobbling and she did not know whether or not she was drunk; that complainant was carrying the package containing the dress and said she had been "with the big shot"; that she knew complainant had made the purchase at defendant's store; that she put complainant to bed and then went to defendant's store, where there was quite a scene. She made accusations against him, returned the dress and received back the purchase price, $2.95. She also called the police and complainant was taken to the police station and was also subjected to medical examination, which revealed bruises on her front left side, arm, knee and lips.

A witness, John Turner, stated that he had been standing in front of the store by a mail box over the entire period of time covered by complainant's visit to the store. He testified that he saw her arrive there about 3:30 or 20 minutes to 4, driving up from the east in a Ford car with two young men; that he particularly noticed her, among the holiday crowd, because she almost got run over by another automobile in crossing the street; that she went directly to a little cigar stand on the corner, bought some kind of a bottle, which she gave to the boys in the automobile, whereupon they drove off northerly; that she then recrossed to defendant's store, entered inside; that about half an hour later the automobile came back, drove around the corner, stopped and waited 10 or 15 minutes; that complainant then came out of defendant's store, got in the automobile and they all drove away; that she came from the store about 4:15 carrying a package wrapped in Christmas paper and that there was nothing wrong or unusual about her demeanor.

In the evening after the sister's report to the police, two officers called on defendant and looked over his store. Over objection they testified that they found a bottle with "dregs of whiskey" in it, a gingerale bottle and some Coca-Cola bottles.

Defendant throughout flatly denied having given intoxicating liquor, or any other kind of liquor to the complainant. He testified that he had been engaged in business in the same

block for 14 years, at the location here mentioned for 12 years; that so far as he recollected he had never before seen complainant; that when complainant's sister called upon him to return the dress, she made accusations against him and threatened him with criminal prosecution if he refused to pay for medical treatment of complainant's injuries. This last statement was corroborated by another witness, who was in the store at the time.

█ It will be noted that if the defendant did in fact give complainant a drink of some kind, there was an utter failure to prove that the liquid, whether or not it was a mixture of gingerale and some other substance, was an intoxicating beverage. Defendant urges that on this point alone the case for the prosecution must fall. He further urges that it was clearly erroneous for the court to permit the police officials to testify that they found in his store a bottle containing "dregs of whiskey", as there was no identification of the bottle nor was it connected up or related in any way to complainant's visit to the store. The police officer stated that defendant told him that a man had brought the whiskey bottle and some gingerale there the day before and consumed it in celebrating the holiday season.

█ It will also be noted that no account was given of complainant's whereabouts from the time she left defendant's store, about 4:15, until her return home about 6 o'clock. According to the witness Turner she drove away with the young men. Her own story is that she does not remember what she did but presumes she just wandered dizzily along the street.

In view of this uncertain state of the record we cannot but believe that defendant may have been injured in his substantial rights by reason of the following remarks made to the jury in the argument of the prosecution and by reason of the further occurrence which will be hereinafter set forth:

Among other things, the prosecuting attorney in her argument stated: " . . . you are dealing here with a little Mexican girl, with a very Mexican type of femininity that those of you who know the Mexican people recognize perfectly. . . . Ladies and gentlemen of the jury, if I have my own opinion as to what motive he had they wouldn't let me give it to you, and I haven't any right to give it to you even if he asked me. And what that motive was, whether it was

Christmas spirit or whether it was a motive to see just how much this girl might be worth some place else and how much liquor she could hold, ladies and gentlemen, is not a problem here. What his motive was in giving her the liquor is neither here nor there . . . '' In connection with these remarks should be considered the sister's accusation that it was defendant's intention to rape the complainant by first causing her to become intoxicated.

But even more injurious to defendant than the above was the following occurrence: The case went to the jury at 3:30 P. M. At 4:57 they came back into court to have certain testimony read. The court asked what their desire was, whereupon the following conversation was had: ''A juror: Your Honor, the gentleman wasn't quite sure about the time . . . The Court: Don't say whether he was quite sure. If you want to ask for some testimony to be read, ask for it, but don't say anybody was not quite sure about anything. That would be misconduct. The Juror: Well, he wanted to known the time the girl left the store and the time she got home. The Court: Are you asking to have the testimony of the girl read? The Juror: Yes, Your Honor. The Court: That is, the complaining witness or her sister. . . . The Juror: Better have the sister's, I guess. The Court: All right. . . . '' The reporter then read some three pages of the sister's testimony, to the effect that complainant returned about 6 o'clock. ''The Court: Do you want anything further read? The Juror: Your Honor, is it a proper question to ask if there is anything in the testimony that would indicate what time the girl left the store? That is the question that seems to be in doubt. The Court: Do you wish to have a portion of Officer Echols' testimony read? Miss Woodhead (representing the State): If Your Honor please, may I suggest that the only statement as to the time the girl left would be the girl's statement, which was a statement to the effect—. well, I won't say what it was. The Court: Is it satisfactory to read Celia Ponce's (complainant's) testimony in regard to that? The Juror: ''Yes, Your Honor . . . '' The reporter then read some sixteen lines from complainant's testimony to the effect that she went to the store about 3 o'clock and did not know how long she stayed. Also, on further request of a juror, two lines from defendant's testimony were

read to the effect that complainant was in his store about 25 minutes. The reporter then said: "I find nothing else in his testimony regarding the time". The court asked the jury if it wanted anything else read; there was no response and the jury retired to again deliberate on a verdict. Over five hours later, to wit: at 10:32 P. M., they returned into court to announce their verdict of conviction.

It will be noted that the prosecuting attorney's remark that the testimony of complainant would be the only other statement on the element of time with respect to which the jury was in doubt, was erroneous. Furthermore, the reporter's statement that he found nothing else in defendant's testimony regarding the time was also erroneous. Defendant testified: "I figure that Miss Ponce had left about 4:15, something like that, so it must have been about two hours or more before Mrs. Moore came in . . . about 6:30. . . . " Still further, the court failed to call to the attention of the jury the definite testimony of the witness Turner on the element of time. He testified: "She came out, got in the car and they went west on 12th Street and that is the last I saw of it . . . when she came out she had a package wrapped in Christmas paper. Q. You are now referring to the time she came out of Henderson's store? A. Yes. Q. What time was it? . . . A. It was about 4:15."

Who can say that the jury, in their five-hour deliberation, might not have reached an opposite conclusion had they had the benefit of having reread to them that which they requested, to wit: all of the testimony touching the element of time, particularly the time that complainant left defendant's store. As above stated, complainant's whereabouts from 4:15 to 6 o'clock are not satisfactorily accounted for.

As the errors above noted require a reversal of the judgment, it is unnecessary to discuss the further contentions of appellant.

The judgment is reversed.

Langdon, J., Thompson, J., and Waste, C. J., concurred.

Rehearing denied.