**STATE of Tennessee, Appellee,**

v.

**Mac Arthur FLATT, Appellant.**

Court of Criminal Appeals of Tennessee, at Nashville.

Jan. 14, 1986.

Permission to Appeal Denied by Supreme Court March 24, 1986.

H. Tom Kittrell, Sr., Trial Counsel, William P. Redick, Jr., Appellate Counsel, Nashville, for appellant.

W.J. Michael Cody, Atty. Gen., Kevin Steiling, Asst. Atty. Gen., Thomas H. Shriver, Dist. Atty. Gen., Jack E. Seaman, Asst. Dist. Atty. Gen., Nashville, for appellee.

## OPINION

ROBERT E. BURCH, Special Judge.

The appellant, Mac Arthur Flatt, was convicted of murder in the second degree and sentenced to forty years imprisonment. In this appeal he contests the sufficiency of the evidence to sustain a conviction of murder and additionally assigns certain other alleged errors in his trial. Since it is determinative, it is only necessary to examine one issue which Appellant has submitted to us. It is, however, necessary in our examination of this issue to review the evidence upon which Appellant's conviction was based.

## FACTS

On October 25, 1983, Appellant was living with Wanda Gail Taylor in Nashville. At about 11 A.M., the incarcerated husband of the Deceased called Appellant's residence requesting that Mrs. Taylor and Appellant go to the home of the Deceased to check on her since she had not shown up for work. Appellant and Mrs. Taylor did so, picking up Billy and Theresa Sanders along the way.

Upon arriving at the residence of the Deceased, Appellant and Mrs. Taylor entered the house, leaving the Sanders family outside. Mrs. Taylor preceded Appellant, discovered the body in the bedroom, screamed and retreated to the living room where Appellant was standing. As Appellant went into the bedroom, Mrs. Taylor ran from the house. Appellant looked at the body, got sick and left the house. From the front of the house Appellant called to Billy Sanders and the two returned to the bedroom where Appellant testified that "he leaned over and looked at her real close."

Under its theory of the case, the State presented evidence of two possible motives:

(1) Robbery of Deceased by Appellant in connection with drug transactions between Appellant and the Deceased.

(2) A grudge held by Appellant against the husband of the Deceased, because of which Appellant broke out the windshield of Deceased's car. After Deceased got a warrant for Appellant, he is alleged to have stated, "You all will pay." These acts occurred "a few weeks" before the crime.

The State showed an opportunity of Appellant to commit the crime by establishing that the Deceased was at Appellant's house the previous evening. Appellant left the house between eleven and eleven-thirty P.M. The Deceased left Appellant's house about nine-fifty-five P.M. The Deceased was pronounced dead at two-ten P.M. the next day and was found at that time to have been dead for from twelve to twenty-four hours. It takes from ten to fifteen minutes to drive from Appellant's house to that of the Deceased.

The only direct evidence linking the Appellant to the crime was the print of his left middle finger left in blood at the seven o'clock position on the doorknob, just above the head of the Deceased. At the time that the Deceased was pronounced dead (2:10 P.M.), the blood in the bedroom was "part dry, part moist".

In addition, in numerous statements given to the police, Appellant stated that he did not enter the bedroom or touch anything therein. These statements were made both before and after the police identified the single fingerprint found in the bedroom. At least one officer was certain that Appellant at the time of the second statement knew that the police had obtained a fingerprint from the bedroom. At trial Appellant testified that when he discovered the body, he leaned around the door, but could not recall touching the doorknob.

At his trial, Appellant was convicted of murder in the second degree. He was later sentenced to forty (40) years imprisonment as a Range II, persistent offender.

The determinative question presented for review is whether the learned trial judge erred when he allowed certain exhibits to be sent into the jury room during their deliberations over the objection of the Appellant.

During the jury's deliberations the foreman sent a note to his Honor requesting that the jury be allowed to view "... the coffee cup (simulated doorknob) and pictures of the crime scene." Over objection of trial counsel for Appellant, the trial judge sent the styrofoam coffee cup and photographs of the crime scene into the jury room for their use in their deliberations.

This was error.

■ Trial exhibits should not be carried into the jury room during deliberations absent consent from the parties. *Watkins v. State*, 216 Tenn. 545, 393 S.W.2d 141 (1965); *State v. Wright*, 618 S.W.2d 310 (Tenn.Cr.App.1981); See also Raybin, *Tennessee Practice—Criminal Practice and Procedure* § 31.14.

The cases cited by the State in support of their argument that this action by the trial judge was not error are not on point. *State v. Thomas Neal Davis*, Hamilton Co. # 778 (Tenn.Cr.App. at Knoxville, November 29, 1982), involves the jury rehearing the testimony of a certain witness in open court after they had begun their deliberations. This situation is covered by an entirely different rule—§ 5.2(a) of the *A.B.A. Standards Relating To The Administration Of Criminal, Trial By Jury*, (hereinafter, *A.B.A. Standards, Trial By Jury*) which was adopted by this Court in *State v. Robert Leo Dunlap* (Tenn.Cr.App. at Knoxville, March 16, 1981). The other authority called by the State in support of its position is *State v. Robert Lee Tipton*, Shelby Co. # 40 (Tenn.Cr.App. at Jackson, October 25, 1984). In *Tipton* the trial judge refused to allow the jury to see a trial exhibit (a map of the area). Citing *Watkins* and *Wright*, this Court declined to find that this refusal was error or found that, if error, it was harmless. See Judge Daughtrey's concurring opinion. In any

event, this case cannot be authority for sending exhibits into the jury room.

At this point, it should be noted that much of the confusion in the matter of the jury's reviewing evidence after they have retired for their deliberations has been caused by failing to differentiate between sending exhibits *into the jury room* and allowing the jury to *come into open court* to review testimony or other evidence (including exhibits).

From the opinion in *Tipton* one cannot determine whether the jury wished to use the exhibit in their deliberations or whether they wished to view the map in open court or whether either option was available to the trial judge. As noted in both the majority and concurring opinions, § 5.2(a), *A.B.A. Standards, Trial by Jury* sets out the guidelines for allowing the jury to view evidence in open court:

"If the jury, after retiring for deliberation, requests a review of certain testimony or other evidence, they shall be conducted into the courtroom. Whenever the jury's request is reasonable, the Court, after notice to the prosecutor and counsel for the defense, shall have the requested parts of the testimony read to the jury and shall permit the jury to re-examine the requested materials admitted into evidence ..."

The majority opinion in *Tipton* may have been suggesting that this procedure be used in both the situation in which a jury asks for exhibits to be sent to the jury room and when the jury asks to review testimony or other evidence in open court. If that is true, the decision conforms exactly to the decisions of this Court adopting § 5.2(a), *A.B.A. Standards, Trial by Jury* and the rule of *Watkins* and *Wright* which do not allow exhibits to be sent into the jury room absent consent of the parties. Using this standard also, the learned trial judge was in error in sending the exhibits into the jury room over objection by counsel for Appellant.

It should be noted that this Court in *Tipton* could have adopted § 5.1, *A.B.A. Standards, Trial By Jury* which allows

exhibits to be sent into the jury room *after* the trial judge has made certain findings:

"... (a) The Court in its discretion may permit the jury, upon retiring for deliberation, to take to the jury room a copy of the charges against the defendant and exhibits and writings which have been received in evidence, except depositions.

(b) Among the considerations which are appropriate in the exercise of this discretion are:

(i) whether the material will aid the jury in proper consideration of the case;

(ii) whether any party will be unduly prejudiced by submission of the material;

(iii) whether the material may be subjected to improper use by the jury."

This Court has previously not adopted § 5.1, *A.B.A. Standards, Trial By Jury* and we decline to do so now. If the rule of *Watkins v. State,* Supra is to be modified or discarded, it is for the Supreme Court, who adopted the rule, to do so.

 Therefore, the trial judge committed error in sending the exhibits into the jury room. Given that this was error, could this error be said to have been harmless? See e.g., *State v. Wright,* Supra 618 S.W.2d at 319.

As may be seen hereinabove, the evidence connecting the Appellant with the crime is tenuous at best. The fingerprint shows that the Appellant was at the crime scene but he, among others, discovered the body and notified the police, which may explain the presence of his fingerprint in blood which was still partially moist upon the arrival of the medical examiner several hours later. The fact that Appellant did not admit/remember that he touched the doorknob is suspicious but not necessarily incriminating. The shock (if Appellant be innocent) of unexpectedly seeing the result of a brutal murder could easily accomplish that result. The evidence against Appellant cannot be said to be overwhelming by any stretch of the imagination. This error certainly could have affected the outcome of the trial.

In addition, the styrofoam cup was a demonstrative (as opposed to evidentiary) exhibit. To allow the jury to experiment, unsupervised, with a demonstrative exhibit most certainly would set a dangerous precedent.

Given the factual weakness of the case against Appellant and the possibility of prejudice to him from the jury's unsupervised use of the demonstrative exhibit, the error cannot be said to have been harmless.

Accordingly, we reverse the judgment of the trial court and remand the case for a new trial consistent with this opinion.

O'BRIEN and DUNCAN, JJ., concur.