**STATE of Tennessee, Appellee,**

v.

**Michael Leon JENKINS, Appellant.**

Court of Criminal Appeals of Tennessee, at Nashville.

July 17, 1992.

Permission to Appeal Denied by Supreme Court Oct. 26, 1992.

Jeffrey A. DeVasher, Sr. Asst. Public Defender and Karl F. Dean, Public Defender, Nashville, for appellant.

Charles W. Burson, Atty. Gen., Bettye Springfield, Asst. Atty. Gen. of Tennessee, Victor S. Johnson, III, Dist. Atty. Gen., and Roger Moore and Roe Ellen Coleman, Asst. Dist. Attys. Gen., Nashville, for appellee.

## OPINION

TIPTON, Judge.

The defendant, Michael Leon Jenkins, was convicted by a jury in the Davidson County Criminal Court for felony murder and robbery. He was sentenced to life and three years imprisonment, respectively, to be served concurrently. In this appeal as of right, the defendant challenges the sufficiency of the evidence as to both convictions and claims that the trial court erred in allowing the jury to listen to the recorded testimony of a state witness after deliberations had begun.

The defendant and another man were charged with the killing and robbery of Melvin "Buddy" McKnight.[1] James "Creature" Caruthers testified that he rode around with the victim from 8:00 p.m. until about 11:30 p.m. on April 20, 1990. He stated that they drank beer and that the victim had approximately four hundred dollars. He acknowledged that the victim had cocaine in the car, but he said it was not used while they were driving around. Caruthers admitted previous convictions for shoplifting and threatening a state's witness.

Michael Kirby testified that in the early morning hours of April 21, 1990, he was sitting on the steps of his house when he saw a small sports car. Two men were in the front seat of the car and one was in the back seat. Mr. Kirby stated that the three men got out of the car, with the man in the back seat going to the back of the car and the driver and the other passenger to the hood of the car. He testified that they were fifty to sixty feet away and that he did not recognize any of them.

Mr. Kirby stated that the two men at the front of the car went around to the back, grabbed the third man, and started hitting and beating him. He said that the man being beaten was unable to fight back. Mr. Kirby stated that one man was holding the victim up and when the victim slid to the ground, the other man kicked him. Mr. Kirby saw one of the men taking off the victim's pants and the other still holding the victim in a bear hug. He stated that, after the beating, the driver and the front seat passenger walked away and the victim staggered to a telephone pole, saying, "I'm gonna get you all." Mr. Kirby stated that the victim sat down and fell backwards. Mr. Kirby called 911.

---

1. Before the trial, the defendant's case was severed from the case of his codefendant, Tarderic J. Mathers, who died before the defendant's trial.

Mr. Kirby admitted that it was dark and that he could not describe anyone. He said that he saw everything that happened and that the incident lasted five to ten minutes.

Ray Michael Lee, Metro Police Department officer, testified that he investigated the incident. He said that he found the victim in a vacant lot and that the victim was missing his pants and shoes. Officer Lee testified that the victim's face was bloody and that the victim complained about his side hurting. There was a strong smell of alcohol about the victim's person. Officer Lee stated that he did not find any money on the victim.

Detective Daniel Frank L. Collins investigated the case, as well. He testified that he was notified on the night of April 21 that the victim had died. In May, he learned the name of the defendant whom he interviewed. The defendant agreed to give a taped statement. The tape-recorded statement was submitted to the jury. Detective Collins identified a transcript of the tape recording as being accurate.

In the statement, the defendant said he was at Nancy Givens' house with Brenda Bryant and Tarderic Mathers. He said the victim and a friend came by the house early in the morning. The defendant stated that everyone was getting high and that the victim had some cocaine. The defendant said that there had been a problem when the victim first arrived because Ms. Bryant thought the victim was trying to proposition her. In any event, the defendant, the victim and Mathers left to get something to drink and more cocaine. The defendant said that he drove the victim's car with the victim in the passenger seat and Mathers in the back seat.

The defendant's statement indicated that they bought liquor and cocaine. The defendant said that the argument about Ms. Bryant began again and the victim told the defendant to stop the car. The defendant said that they got out of the car and the victim started pushing him. The defendant hit the victim and a fight started.

The defendant said that the victim told the defendant that he was going to have to kill him. The defendant said that he started throwing more blows and started kicking and stomping. The defendant thought the victim was about unconscious when he and Mathers left. The defendant said that Mathers talked about taking the victim's money. Mathers took off the defendant's shoes and bluejeans and the two of them ran away.

In the statement, the defendant said that Mathers threw the victim's pants into a dumpster and that he "guessed" that Mathers took the money out of the victim's pocket. The defendant admitted that he knew there was about four hundred dollars in the victim's pocket. In the statement, the defendant said that he was the only one involved in the fight with the victim. He admitted that he bought more drugs with part of the money and that he did not call for an ambulance after leaving the victim.

Dr. Charles W. Harlan testified regarding the autopsy he performed on the victim. He found multiple abrasions and contusions on the victim. He stated that there was a good deal of internal bleeding and that the ultimate cause of death was blunt trauma to the abdomen. Dr. Harlan testified that the victim's injuries were consistent with blows from a fist, foot or both. He stated that the victim's blood alcohol level was .22 percent when he was admitted to the hospital and that there was cocaine in his blood.

The defendant testified at the trial, in somewhat similar fashion to his tape-recorded statement. He stated that, after they bought the cocaine, the victim became paranoid, thinking police officers were following them. The defendant said he pulled over at the victim's request and that the victim hit him in the jaw when they got out of the car. When the victim hit him again, the defendant started defending himself.

The defendant testified that Mathers got out of the back seat of the car and tried to break up the fight. The defendant admitted that he kicked the victim after the victim was on the ground, saying that he lost his head. He stated that Mathers asked, "Well, we're not going to leave him with all that money on him, are we?" The defendant said that he did not want to have

anything to do with it because it was not his money. He denied helping Mathers take the money. He stated that he did not know that the victim had a lot of money.

· The defendant testified that he and Mathers returned to Ms. Givens' house and he admitted that he asked Mathers for a few dollars, but that he was under the influence and realized it was a bad decision. He said that he did not think the victim was seriously injured.

On cross-examination, the defendant testified that he kicked the victim when the victim was on the ground, but he said the victim was not helpless. He denied Mr. Kirby's testimony that either he or Mathers was holding the victim while the other pulled the victim's pants down. He denied that he and Mathers went to the front of the car. He admitted taking some money from Mathers later that night, but he said that it was not the victim's money. The defendant claimed he was defending himself.

In contesting the sufficiency of the evidence, the defendant claims that there was insufficient connection between the fatal assault and the robbery to sustain his conviction for felony murder. Also, he asserts that his testimony about Mathers acting alone in taking the victim's money was uncontradicted. Finally, he claims that the evidence indicates an absence of the element of malice necessary to support his murder conviction.

■ The standard by which we review the sufficiency of the evidence on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). This means that the state is entitled to the strongest legitimate view of the evidence on appeal and all reasonable inferences which may be drawn from it. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn.1978).

■ In the light most favorable to the state, the proof showed that the defendant,

without legal provocation, assaulted the victim. Mr. Kirby testified that the victim was unable to fight back, as he was being held while he was being beaten and kicked. The defendant's own testimony was that he kicked the victim, who was on the ground. Mr. Kirby stated that he saw one person holding the victim while the other removed his pants.

In *Farmer v. State*, 201 Tenn. 107, 296 S.W.2d 879 (1956), our Supreme Court stated that, to sustain a conviction for felony murder, the murder must have been done in pursuance of the felony and must not be merely collateral to the unlawful act. In other words, "[t]he killing must have had an intimate relation and close connection with the felony and not be separate, distinct, and independent from it...." 296 S.W.2d at 883, citing *Wharton on Homicide*, § 126 (3d ed. 1907). In this case, the evidence was sufficient for the jury to conclude beyond a reasonable doubt that the defendant was a willing and active participant in the robbery and, as such, he became accountable for all the consequences following therefrom. *See State v. Brown*, 756 S.W.2d 700, 703 (Tenn.Crim.App.1988). Also, the evidence of the assault and the manner in which the punishment was delivered while the victim was on the ground or being held would justify a jury finding the existence of malice. The evidence supports both of the defendant's convictions.

■ In his second issue, the defendant contends that he is entitled to a new trial because the jury was erroneously allowed during deliberations to hear a recording of Mr. Kirby's trial testimony. The record reflects that the jury requested (1) a sketch or map of the path taken by the participants after leaving Ms. Givens' house, (2) a review of the transcript of the defendant's taped statement, and (3) a review of Mr. Kirby's trial testimony. The trial court denied the sketch, but allowed a review of the defendant's transcript in open court. Also, the jury was allowed, in open court, to hear the tape of Mr. Kirby's testimony.

The defendant contends that, over objection, the trial court should not have allowed Mr. Kirby's testimony to be replayed. As-

serting that the testimony was the "linchpin" of the state's case, he claims that it was error because it unduly emphasized the testimony to the defendant's prejudice. He relies upon *Sterner v. State*, 552 S.W.2d 793 (Tenn.Crim.App.), *cert. denied*, (1977) in which this Court, after reversing a conviction on other grounds, stated that "it would be best not to emphasize the testimony of one particular witness by replaying his testimony at the request of the jury, as was done in this case, over objection on behalf of the defendant." *Id.* at 794. In *Sterner*, this Court quoted from *Henry v. United States*, 204 F.2d 817, 820–821 (6th Cir.1953), as follows:

> After the jury has reported its inability to agree upon a verdict, it is, in our opinion, incumbent upon the trial judge to exercise extreme care in reopening the case for the introduction of further testimony or in permitting any evidence to be restated or re-read to the jurors. Unless restraint is exercised by the judge, it may well be that he would permit undue emphasis to be placed upon portions of the testimony, if such portions were called for by the jurors.

The defendant reads *Sterner* as barring a jury's rehearing of testimony during deliberations if the defendant objects.

In response, the state relies upon *State v. Flatt*, 727 S.W.2d 252 (Tenn.Crim.App.), *applic. denied*, (1986), in which this Court reversed a second degree murder conviction because the jury was allowed to take trial exhibits into the jury room for its use in deliberations. *See Watkins v. State*, 216 Tenn. 545, 393 S.W.2d 141, 144 (1965). In discussing the guidelines which apply, this Court in *Flatt* quoted § 5.2(a) of the ABA Standards, Trial by Jury (1968)[2], as follows:

> If the jury, after retiring for deliberation, requests a review of certain testimony or other evidence, they shall be conducted into the courtroom. Whenever the jury's request is reasonable, the Court, after notice to the prosecutor and counsel for the defense, shall have the requested parts of the testimony read to

the jury and shall permit the jury to re-examine the requested materials admitted into evidence ...

727 S.W.2d at 254. This Court stated that § 5.2(a) [Standard 15–4.2(a)] was adopted in *State v. Robert Leo Dunlap*, No. 183, Bradley Co. (Tenn.Crim.App., Knoxville, Mar. 16, 1981). In *Dunlap*, the trial court's refusal to allow the jury to rehear a tape recording which was an exhibit in the trial was held to be error under § 5.2(a), but harmless. However, we note that the Supreme Court in denying permission to appeal in *Dunlap concurred in results only*. (Supreme Court Order, June 1, 1981).

In *State v. Smith*, 656 S.W.2d 882 (Tenn. Crim.App.1983), *applic. denied*, (1983), this Court held that allowing the jury to review two recording transcripts which were exhibits was not reversible error because the trial court followed § 5.2(a) [Standard 15–4.2(a)] of the Trial by Jury standards. This Court noted that "the procedure was explicitly adopted by this court" in *Dunlap*, but did not refer to the Supreme Court's order. 656 S.W.2d at 888.

Given the fact that the Supreme Court did not prevent *Smith* and *Flatt* from being reported officially, it might be argued that *Dunlap*'s reliance upon the ABA Standard was not the motivation for the Court's disapproval of the *Dunlap* opinion. *Dunlap*, *Smith* and *Flatt* dealt solely with juries reviewing exhibits, not trial testimony. Also, this Court revisited *Sterner* in *State v. Tommy Edward Hatcher*, No. 253, Blount Co., 1990 WL 143782 (Tenn.Crim. App., Knoxville, Oct. 4, 1990), in which drug convictions were affirmed even though the jury was allowed, at its request, to rehear tape recordings of conversations between the defendant and an undercover agent. The tapes had been placed into evidence as exhibits.

In *Hatcher*, *Sterner* was interpreted as making it error for the jury to rehear the tapes because it would tend to emphasize unduly that particular evidence. This Court criticized *Sterner* and reasoned as follows:

2. In 1978, § 5.2(a) was redesignated ABA Standard 15–4.2(a).

We think this Court and this State should reexamine this issue and depart from *Sterner* insofar as it holds this is error. The reason for the holding is, in our view, misplaced. The court does not emphasize the evidence by permitting the jury to rehear what they wish to hear in carrying out their task of determining the facts in a case. If there is any emphasis being placed on the evidence, it is being placed there by the jury. It can reasonably be said the jury has placed emphasis upon the evidence of one side or another whenever they reach a verdict or, for that matter, whenever they decide one witness is more credible than another witness. In such case, we would not hold jury emphasis on particular evidence to be improper.

Further, the holding in *Sterner* places Tennessee among the minority on this issue. *See*, 50 ALR 2d 176. We are satisfied it is time to depart from the *Sterner* rule and join the majority in allowing the jury to hear evidence again under the guidance and discretion of the trial judge. To this end we hold it was not error to allow the jury to hear this tape again, the decision in *Sterner* not withstanding.

*State v. Hatcher, supra,* slip op. at 7. The Supreme Court denied permission to appeal, but stated that it did not recommend the opinion for publication. (Supreme Court Order, January 14, 1991). *Hatcher* did not discuss the application of ABA Standard 15–4.2(a).

We do not view the dictum in *Sterner* as requiring that a jury's request for the replaying of particular testimony must always be denied. As was stated in *Henry v. United States, supra,* "[t]here is no iron-bound, copper-fastened, double-riveted rule against the admission of evidence after both parties have rested upon their proof and even after the jury has entered upon its deliberations." 204 F.2d at 820. *Sterner* and *Henry* only advise us that trial courts must be cautious in considering such a request and sensitive to the potential for *undue* emphasis on particular evidence.

The need for such caution is exemplified by *People v. Henderson,* 4 Cal.2d 188, 48 P.2d 17 (1935), a case of contributing to the delinquency of a minor by providing intoxicating liquor. In *Henderson,* the jury requested that certain testimony be reread. Upon inquiry from the trial court, it appeared that jurors were interested in determining the time the victim was at the defendant's store, the time she left the store, and the time she arrived home. The trial court ultimately had the court reporter read certain excerpts from the testimony of the victim, her sister, and the defendant. The court reporter stated: "I find nothing else in [the defendant's] testimony regarding the time."

On appeal, the court noted that other witnesses, including other testimony by the defendant, provided evidence of different times than were reread to the jury. The court queried:

> Who can say that the jury, in their 5–hour deliberation, might not have reached an opposite conclusion had they had the benefit of having reread to them that which they requested, to-wit, all of the testimony touching the element of time, particularly the time that complainant left defendant's store.

48 P.2d at 20. The conviction was reversed.

Juries apply emphasis to evidence which is before them. Obviously, if they are allowed to rehear particular testimony at their request, there is benefit to be gained in assisting the jurors to decide issues based upon an accurate recollection of the evidence.

> When a jury retires to consider their verdict, their discussion may produce disagreement or doubt or failure of definite recollection as to what a particular witness said in the course of his testimony. If they request enlightenment on the subject through a reading of his testimony, in the absence of some unusual circumstance, the request should be granted. The true administration of justice calls for such action. Where there is a doubt in the minds of jurors as to what a witness said, it cannot be prejudicial to

anyone to have that doubt removed by a rehearing of his testimony. There is no need to be chary for fear of giving undue prominence to the testimony of the witness. If ... a jury is to be considered intelligent enough to be entrusted with powers of decision, it must be assumed they have sense enough to ask to have their memories stimulated or refreshed only as to those portions of the testimony about which they are in doubt or disagreement.

*State v. Wolf,* 44 N.J. 176, 207 A.2d 670, 675–676 (1965). Indeed, the rehearing of evidence by a jury, even though deliberations have begun, is not novel in Tennessee. In *Van Huss v. Rainbolt & Van Huss,* 42 Tenn. 139 (1865), a will contest, the jury, after beginning deliberations, returned to court and asked that one of the subscribing witnesses to the will restate a portion of his testimony. The trial court allowed the witness to do so. On appeal, our Supreme Court observed as follows:

> The practice of allowing a restatement to the jury, of such portions of the evidence as they may desire to hear, at anytime before delivering their verdicts; and in the presence of the court, is too well established to be called in question.

*Id.* at 141.

We believe that the decision to allow a jury to review any evidence submitted at trial, whether it be an exhibit or testimony, should be left within the discretion of the trial court as limited by ABA Standard 15–4.2 in its entirety. The full standard is as follows:

> (a) If the jury, after retiring for deliberation, requests a review of certain testimony or other evidence, they shall be conducted to the courtroom. Whenever the jury's request is reasonable, the court, after notice to the prosecutor and counsel for the defense, shall have the requested parts of the testimony read to the jury and shall permit the jury to

reexamine the requested materials admitted into evidence.

> (b) The court need not submit evidence to the jury for review beyond that specifically requested by the jury, but in its discretion the court may also have the jury review other evidence relating to the same factual issue so as not to give undue prominence to the evidence requested.

Under this standard the trial court would have the discretion to take such action as necessary, including denying the jury's request, to insure that the jury's determination of a factual issue would not be distorted by *undue* emphasis on particular evidence.

In this case, the replaying of the recording of Mr. Kirby's testimony was the most accurate method available to comply with the jury's request. The trial court gave notice to the prosecutor and defense counsel regarding the request and the recording was played in open court. If, as the defendant contends, Mr. Kirby's testimony was the "linchpin" of the state's case, it is understandable that the jury might focus on Mr. Kirby's testimony and desire to remove any existing doubt as to that testimony. Given the jury's request, the trial court did not place undue emphasis on Mr. Kirby's testimony by allowing the jury to hear it again.

In consideration of the foregoing and the record as a whole, the convictions are affirmed.

SCOTT and PEAY, JJ., concur.