# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT KNOXVILLE

### APRIL 1998 SESSION



**FILED**

**September 8, 1998**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | |
| | ) | |
| Appellee, | ) | C.C.A. No. 03C01-9711-CR-00514 |
| | ) | |
| vs. | ) | Knox County |
| | ) | |
| **CLINT ELMORE,** | ) | Hon. Mary Beth Leibowitz, Judge |
| | ) | |
| Appellant. | ) | (Aggravated Rape, |
| | ) | Attempted Aggravated Rape (3 cts.)) |

FOR THE APPELLANT:

**JEFFREY WHITT (at trial and on appeal)**
**RICHARD CLARK (at trial)**
706 Walnut St., Ste. 902
Knoxville, TN 37902

FOR THE APPELLEE:

**JOHN KNOX WALKUP**
Attorney General & Reporter

**ELIZABETH B. MARNEY**
Asst. Attorney General
425 Fifth Ave. N., 2d Floor
Nashville, TN 37243-0493

**RANDALL E. NICHOLS**
District Attorney General

**CHARME JOHNSON**
**CHARLES CERNY**
Asst. District Attorneys General
City-County Building
Knoxville, TN 37902

OPINION FILED:_____

**AFFIRMED - AGGRAVATED RAPE AND 2 COUNTS ATTEMPTED AGGRAVATED RAPE**

**REVERSED & DISMISSED - 1 COUNT ATTEMPTED AGGRAVATED RAPE**

**CURWOOD WITT, JUDGE**

**OPINION**

The defendant, Clint Elmore, appeals his convictions of aggravated rape and three counts of attempted aggravated rape. Elmore was convicted at a jury trial in the Knox County Criminal Court. His convictions relate to incidents of sexual abuse of Elmore's stepson. In this direct appeal, Elmore raises several issues for our consideration:

1. Whether the evidence is sufficient to sustain his three attempted aggravated rape convictions.

2. Whether the trial court erred in denying the defense's request to recall the victim during its case-in-chief.

3. Whether the trial court erred in allowing the state to strike a male member of the jury panel.

4. Whether the trial court erred in denying the jury's request during deliberations to review all of the state's witnesses' testimony.

5. Whether the sentence imposed is excessive.

After a review of the record and the briefs of the parties, we affirm the defendant's convictions of aggravated rape and two counts of attempted aggravated rape. We reverse and dismiss the remaining attempted aggravated rape conviction for insufficient evidence.

In September 1990, Elmore was married to Michelle Elmore. Ms. Elmore had two children from a previous marriage who lived in the marital home. The defendant worked during the day, and Ms. Elmore worked in the afternoons and evenings. Ms. Elmore left her children in her husband's care while she was at work.

On September 3, 1990, D.O.[1] attained his seventh birthday.  D.O. is one of Ms. Elmore's children and the victim in this case.  D.O. testified at trial that when he was in the second grade, the defendant sexually assaulted him on one occasion and attempted to do so on three others.  Once when the victim was about to take a bath, the defendant came in the bathroom.  The victim thought at first the defendant was using the bathroom.  However, the defendant asked D.O., who was naked, to sit on his lap.  D.O. complied with his step-father's request.  The defendant put his "private part" in the victim's "butt" and moved the victim back and forth.  This hurt the victim.

The victim further recounted that on two other occasions, he and the defendant were in the living room when the victim's sister was at a neighbor's house.  The defendant asked the victim to "suck his private."  Before the defendant made these requests, he unzipped his pants and took out his "private."  The victim differentiated between these two occasions by recalling that during one he was standing and on the other he was sitting.

The victim recalled a fourth incident when the defendant came in the bathroom and "tried one more time."  However, the victim said, "It didn't happen. He asked."  The victim was not specific about what the defendant asked.

Michelle Elmore testified that the defendant kept her children while she was at work during the relevant time period.  Shortly before November 1990, D.O. would cry and ask her to stay home from work, which was not typical behavior for him.  She recalled D.O. telling her that the defendant had asked D.O. to give him

---

[1]In accord with court custom, we refer to the name of this minor victim of sexual abuse by his initials only.

a "blow job." She confronted the defendant about this, and he explained that he was just trying to find out how much D.O. knew about sex.

Michelle Elmore admitted she gives her children medication from time to time. She denied giving them enemas for constipation. She admitted, however, she had asked the defendant to purchase an enema for her own use.

Debbie Greene, a sex abuse investigator with the Department of Children Services, interviewed D.O. while investigating an unrelated case. D.O., who was by this time eight years old, divulged the defendant's prior abuse of him to Ms. Greene.

Doctor Mary Palmer Campbell, a pediatrician, examined D.O. as a result of the report to Ms. Greene. She observed scarring of the rectal tissue from the 11:00 to 1:00 positions in a stellate pattern. She also observed flat tissue at the 12:00 position, indicating damage. She also observed the appearance of thin skin at 4:00 and 5:00 with bluish discoloration. Her findings were consistent with a history of anal penetration. She could not, however, give an opinion on the age of the scars, other than to say they had resulted from trauma more than 48 to 72 hours earlier.

Doctor Campbell testified that a child might have scarring from constipation, although it would typically be found at the 12:00 or 6:00 positions. She said she had never seen worse scarring than what she found with D.O.

The defendant testified that he had never touched the victim in "bad places" or asked the victim to touch him in "bad places." He said he worked 180 to 190 hours every two weeks in September 1990, and during other months he worked

4

an average of 50 to 70 hours per week.  Elmore thought D.O. held his parents'

divorce against Elmore at first,[2] but at the time of the alleged abuse they were

getting along fine, despite having some arguments.

The defendant recalled that both of his step-children had "large bowel

problems" according to the report Michelle Elmore gave him.  The defendant

remembered buying suppositories and enemas for his wife.  She used these things

on the children for their constipation.

Two character witnesses testified that the defendant was honest.  The

witnesses were surprised by the charges against the defendant.

The jury found the defendant guilty of aggravated rape by anal

penetration, attempted aggravated rape by anal penetration, and two counts of

attempted aggravated rape by fellatio.  The trial court thereafter sentenced the

defendant to an effective 30 year sentence in the Department of Correction.  This

appeal addresses those convictions and the sentence.

**A**

First, the defendant challenges the sufficiency of the convicting

evidence of the three counts of attempted aggravated rape.  When a defendant

challenges the sufficiency of the evidence, an appellate court's standard of review

is, whether after considering the evidence in the light most favorable to the

prosecution, <u>any</u> rational trier of fact could have found the essential elements of the

crime beyond a reasonable doubt. <u>Jackson v. Virginia</u>, 443 U.S. 307, 324, 99 S. Ct.

2781, 2791-92 (1979); <u>State v. Duncan</u>, 698 S.W.2d 63, 67 (Tenn. 1985); Tenn. R.

---

[2]Elmore testified he met D.O.'s mother in 1987.  They married in August 1988.

5

App. P. 13(e). This rule is applicable to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. State v. Dykes, 803 S.W.2d 250, 253 (Tenn. Crim. App. 1990).

In determining the sufficiency of the evidence, this court should not reweigh or reevaluate the evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Nor may this court substitute its inferences for those drawn by the trier of fact from the evidence. Liakas v. State, 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (1956); Farmer v. State, 574 S.W.2d 49, 51 (Tenn. Crim. App. 1978). On the contrary, this court is required to afford the State of Tennessee the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. Cabbage, 571 S.W.2d at 835.

At the time of these offenses, aggravated rape included the "unlawful sexual penetration of a victim by the defendant or the defendant by a victim . . . [where t]he victim is less than thirteen (13) years of age." Tenn. Code Ann. § 39-13-502(a)(4) (1991) (amended 1993). "Sexual penetration" includes both fellatio and anal intercourse. Tenn. Code Ann. § 39-13-501(7) (1997).

Attempt occurs where a person,

> acting with the kind of culpability otherwise required for the offense: (1) Intentionally engages in conduct or causes a result that would constitute an offense if the circumstances surrounding the conduct were as the person believes them to be; (2) Acts with intent to cause a result that is an element of the offense, and believes the conduct will cause the result without further conduct on the person's part; or

6

(3) Acts with the intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense.

Tenn. Code Ann. § 39-12-101(a) (1997). In order for an attempt to be committed, the defendant must have the intent to commit the crime, perform an overt act, and fail to consummate the crime. Gervin v. State, 212 Tenn. 653, 657, 371 S.W.2d 449, 451 (1963).

In the light most favorable to the state, on two occasions the defendant unzipped his pants, took out his penis and asked his stepson to fellate him. From this evidence, a rational jury could conclude that the defendant acted culpably by removing his sexual organ from his clothing and, using the advantage of his custodial authority over the seven-year-old victim, asking the victim to perform a sexual act. See McEwing v. State, 134 Tenn. 649, 653, 185 S.W. 688, 689 (1916) ("[T]here must be some overt act, evidencing, not only a purpose to commit the crime, but indicating the beginning of its execution."); cf. State v. Gordon Allen Furches, No. 03C01-9205- CR-00164 (Tenn. Crim. App., Knoxville, Jan. 13, 1993) (evidence sufficient to sustain defendant's conviction of attempted rape where he gained entry to victim's apartment by trickery, ordered victim at gunpoint to lie on bed, assured the victim he would not hurt her, began removing his clothing, then left the victim's apartment), perm. app. denied (Tenn. 1993).

However, we are unpersuaded of the sufficiency of the convicting evidence regarding the attempted aggravated rape by anal penetration. At trial, D.O. testified on direct examination about the anal penetration in the bathroom and the two incidents of attempted fellatio in the living room. He mentioned nothing about a fourth incident on direct examination. During cross-examination, defense

7

counsel asked D.O. about the rape in the bathroom. Immediately following that line of questioning, the following exchange occurred.

> Q    Would it surprise you that [sic] if I told you the last time you testified that you said that wasn't the only thing that happened in that bathroom, would that surprise you?
>
> A    Yeah.
>
> . . .
>
> Q    Do you remember testifying that you said that "Buck" came into the bathroom and tried to do this to you in the bathroom before?
>
> A    Yes, he tried one more time.
>
> Q    So now, did anything happen in the bathroom other than this one time?
>
> A    It didn't happen. He asked.
>
> Q    You said he just asked?
>
> A    Yes.

Even in the light most favorable to the state, we do not view this testimony as proof beyond a reasonable doubt of attempted aggravated rape by anal penetration. There is no evidence of what specific act the defendant asked the victim to perform or to allow the defendant to perform, nor is there evidence of any overt action the defendant committed toward completion of the offense. Accordingly, it is our responsibility to reverse and dismiss Elmore's conviction of attempted aggravated rape by anal penetration.

## II

Next, we consider the trial court's denial of the defendant's request to recall D.O. during his case-in-chief. In his appellate brief, the defendant has cited no authority whatsoever in support of his claim that he was denied a fair trial by the trial court's action. Accordingly, the issue has been waived. Tenn. R. App. P.

27(a)(7), (h); Tenn. R. Ct. Crim. App. 10(b).

Additionally, the defense failed to make an offer of proof of D.O.'s testimony either during a jury-out hearing at trial or at the hearing on the motion for new trial. Without an offer of proof, we have no way of assessing whether any alleged error on the part of the trial judge was prejudicial. See State v. Goad, 707 S.W.2d 846, 852-53 (Tenn. 1986). The duty of this court is one of legal analysis, not speculation. The issue has been waived on this basis, as well. See Tenn. R. App. P. 36(a).

## III

Third, we must consider whether the trial court allowed the state to exercise a peremptory challenge to strike a male member of the jury panel for insufficient cause. The essence of the defendant's complaint is that the state sought a jury panel consisting primarily of women because women are less likely than men to be accused of rape, the crime on trial.

The United States Supreme Court has said it is constitutionally impermissible to strike prospective jurors solely on the basis of their gender. J.E.B. v. Alabama ex rel. T.B., 511 U.S. 127, 114 S. Ct. 1419 (1994); see also State v. Turner, 879 S.W.2d 819 (Tenn. 1994). If a party seeks to test an opposing party's use of a peremptory challenge, it must make out a prima facie case that the challenged juror is being stricken for a discriminatory purpose. See Batson v. Kentucky, 476 U.S. 79, 93-97, 106 S. Ct. 1712, 1721-23 (1986) (race discrimination); Purkett v. Elem, 514 U.S. 765, 767-68, 115 S. Ct. 1769, 1770-71 (1995) (race discrimination). Then, the party which exercised the challenge may rebut the prima facie case of discrimination by offering a gender-neutral explanation for the strike. See Batson, 476 U.S. at 97, 106 S. Ct. at 1723. While a gender-

9

neutral explanation will satisfy the burden of production, the trial court retains the authority to find that the challenge was exercised upon a gender-based motive and disallow excusing of the juror. See Woodson v. Porter Brown Limestone Co., 916 S.W.2d 896, 906 (Tenn. 1996) (race discrimination). On appellate review, the trial court's findings of fact are afforded great deference and will be set aside only if clearly erroneous. See Woodson, 916 S.W.2d at 906.

In the case at bar, eighteen prospective jurors were seated initially. We circumstantially infer from their names and the titles used by the attorneys in addressing them that nine were women and nine were men.[3] During the entire selection process, the defendant struck four women and three men, and the state struck one woman and four men. The final panel consisted of ten women and two men and a female alternate.

Notably, the defense never objected to any of the state's peremptory challenges. At one point, the court sua sponte asked for a bench conference. The court inquired of the prosecutor why it had just challenged one of the male jurors. The prosecutor explained she had stricken the juror "because he's not paying attention to anything that is going on in the courtroom." The court found this "reasonable" and allowed the challenge to stand. After the jury was selected, the defense then raised an objection to the state's challenge of men from the panel. The prosecutor said she had not used gender as a basis for any of her peremptory challenges, and the court noted that both sides struck approximately the same number of men.

Affording proper deference to the trial court's determination, we find

---

[3]The trial court observed as much at the motion for new trial.

no clear error in its finding that the prosecutor did not engage in gender discrimination. First and foremost, the trial court found the prosecutor's explanation credible. Cf. State v. Tremaile Malone, No. 03C01-9510-CC-00314, slip op. at 3-4 (Tenn. Crim. App., Knoxville, Mar. 20, 1997) (peremptory challenge not discriminatorily exercised where prosecutor said prospective juror seemed bored, inattentive and resentful), perm. app. denied (Tenn. 1997). Additionally, the state challenged individuals of both sexes. Some of the men on the venire were stricken by the defense. Viewing the jury selection process in its entirety, the record indicates a fair selection process which happened to result in a predominately female panel.

Furthermore, the defense failed to raise the issue at the time any of the challenges were exercised by the state. The remedy for the discriminatory exercise of a peremptory challenge is for the court to disallow the exclusion of the challenged juror. Woodson, 916 S.W.2d at 906-07. Here, the defense failed to raise its objections in time to allow the court to cure any alleged discrimination. Having failed to prevent the alleged error from occurring, the defense is not entitled to appellate relief. Tenn. R. App. P. 36(a).

## IV

The next issue is whether the trial court erred in denying the jury's request during deliberations to review all of the state's witnesses' testimony.

In Tennessee, the decision whether to allow the jury to review evidence during deliberations is governed by Standards of the American Bar Association.

(a)    If the jury, after retiring for deliberation, requests a review of

11

certain testimony or other evidence, they shall be conducted to the courtroom. <u>Whenever the jury's request is reasonable</u>, the court, after notice to the prosecutor and counsel for the defense, shall have the requested parts of the testimony read to the jury and shall permit the jury to re-examine the requested materials admitted into evidence.

(b)     The court need not submit evidence to the jury for review beyond that specifically requested by the jury, but in its discretion the court may also have the jury review other evidence relating to the same factual issue so as not to give undue prominence to the evidence requested.

<u>State v. Jenkins</u>, 845 S.W.2d 787, 793 (Tenn. Crim. App. 1987) (quoting ABA Standard 15-4.2(a)) (emphasis added). On appellate review, we will disturb the trial court's ruling only if an abuse of discretion is shown. <u>See</u> <u>State v. Steven Radley</u>, No. 01C01-9311-CC-00382, slip op. at 7 (Tenn. Crim. App., Nashville, July 7, 1994), <u>perm. app. denied</u> (Tenn. 1994).

In this case, the court found the jury's request to review the testimony of all of the state's witnesses and none of the defense witnesses unreasonable. The court rationalized that the likelihood of prejudice to the defendant was high because granting the request would place undue emphasis on the state's evidence. Furthermore, the court reasoned, the only way to effectively cure the undue emphasis would be to have the jury review the defense witnesses' testimony, as well. The court found this alternative unreasonable because it would effectively involve review of the <u>entire</u> trial.

We are unpersuaded by the defendant's argument that the trial court should have granted the jury's request because he consented to the requested action. The trial court properly perceived its duty as one of ensuring fairness and justice, rather than one of simply following the path of least resistance. We see no abuse of discretion in the ruling.

**V**

12

Finally, the defendant challenges his sentence as excessive. He is serving an effective sentence of 30 years -- 22 years for aggravated rape consecutively to concurrent sentences of eight years for each attempted aggravated rape conviction.

In determining whether the trial court has properly sentenced an individual, this court engages in a de novo review of the record with a presumption that the trial court's determinations were correct. Tenn. Code Ann. § 40-35-401(d) (1997). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In conducting our de novo review, we must consider the evidence at sentencing, the presentence report, the sentencing principles, the arguments of counsel, the statements of the defendant, the nature and characteristics of the offense, any mitigating and enhancement factors, and the defendant's amenability to rehabilitation. Tenn. Code Ann. §§ 40-35-210(b), 40-35-103(5) (1997); Ashby, 823 S.W.2d at 168. On appeal, the appellant has the burden of showing that the sentence imposed is improper. Tenn. Code Ann. § 40-35-401(d), Sentencing Comm'n Comments (1997); Ashby, 823 S.W.2d at 169.

We find that the trial court sentenced the defendant in accord with the statutory framework; therefore, its determination is entitled to the presumption of correctness. We will consider, first, the length of the defendant's individual sentences, and second, the propriety of consecutive sentencing.

**A**

The defendant's first sentencing complaint is with the length of the individual sentences. He claims that the trial court erroneously applied

13

enhancement factors (4) and (12). Factor (4) applies where "[a] victim of the offense was particularly vulnerable because of age or physical or mental disability . . . ," and factor (12) applies where "[d]uring the commission of the felony, the defendant willfully inflicted bodily injury upon another person, or the actions of the defendant resulting in the death of or serious bodily injury to a victim or a person other than the intended victim." Tenn. Code Ann. § 40-35-114(4), (12) (1997). On the other hand, the defendant concedes the applicability of factors (1) and (15), pertaining to the defendant's prior history of criminal convictions or behavior and abuse of a position of private trust, although he claims these factors should receive little weight.

The general rule regarding the application of factor (4) to child victims of sexual abuse is that the factor may be applied "when a victim's natural physical and mental limitations renders the victim particularly vulnerable for his or her age because of an inability to resist, a difficulty in calling for help, or a difficulty in testifying against the perpetrator." State v. Kissinger, 922 S.W.2d 482, 487 (1996) (citing State v. Hayes, 899 S.W.2d 175, 185 (Tenn. Crim App. 1995)). Our supreme court has said that the trial court should also consider whether the victim's age is entitled to additional weight and whether the victim's vulnerability made him or her a target of the offense, or alternatively, whether the offense was committed in such a manner as to render the victim's vulnerability irrelevant. State v. Walton, 958 S.W.2d 724, 729 (Tenn. 1997).

The evidence of record supports the trial court's conclusion that this victim was particularly vulnerable because of his age. The defendant intimidated the victim with the threat that his mother would not love him anymore if he revealed the defendant's actions. The defendant also told the victim that if his mother found out, it would break up the family. The victim thought this meant his mother would

14

leave him. Because of the victim's young age, he was unable to see the lack of merit in these threats. More significantly, the victim, even though several years older when he testified at trial in 1997, was still a child and was extremely emotional when asked what the defendant had done to him. He cried and became so distraught that further questioning had to be suspended while he regained his composure. The defendant committed the offense under the guise of his parental authority over the victim when he and the victim were home alone. In this situation, a young victim is not likely to be able to summon help. Accord State v. Andrew Johnson, III, No. 02C01-9304-CR-00050, slip op. at 6-7 (Tenn. Crim. App., Jackson, Apr. 20, 1994) (factor (4) applied to defendant's aggravated rape of his four-year-old daughter because crime committed while victim was home alone with defendant and under his care), perm. app. denied (Tenn. 1994).

We turn next to the defendant's argument that "a clear reading of the statute" reveals that enhancement factor (12) "is referring to someone 'other than the intended victim.'" The defendant has failed to cite any authority supporting this novel proposition of law. Therefore, the issue has been waived. Tenn. R. App. P. 27(a)(7), (h); Tenn. R. Ct. Crim. App. 10(b).

In any event, we have applied this factor upon a showing the defendant willfully inflicted bodily injury on the victim. See, e.g., State v. Treva Strickland, No. 03C01-9611-CC-00427, slip op. at 9-10 (Tenn. Crim. App., Knoxville, Dec. 16, 1997); State v. Kathy Ball, No. 03C01-9512-CC-00387, slip op. at 9 (Tenn. Crim. App., Knoxville, Oct. 31, 1997). If the issue had not been waived, we would agree with the trial court's finding that the victim has suffered bodily injury. The testimony of Dr. Campbell that she had never seen anal scarring worse than the victim's is compelling. Furthermore, the victim testified that the incident of anal rape hurt. The disparity in physical stature of the victim, as compared with that of

15

the defendant,[4] made it probable, if not certain, that anal penetration would result in bodily injury to the victim. The victim showed symptoms of emotional distress relative to all of the incidents when he testified, and the victim impact statement reflects that the defendant's crimes have caused the victim to seek counseling. The defendant made threats to the victim to prevent him from telling his mother about the defendant's actions, indicating willful behavior.

Finding no error in the application of the challenged enhancement factors, we move on to the length of the defendant's sentences. Aggravated rape is a Class A felony. Tenn. Code Ann. § 39-13-502(b) (1997). As a Range I offender, the defendant faced a sentence of 15 to 25 years. Attempted aggravated rape is a Class B felony. Tenn. Code Ann. §§ 39-13-502(b), 39-12-107(A) (1997). The defendant faced Range I sentences of eight to twelve years. We have considered enhancement factors (1), (4), (12) and (15), as well as the mitigation the trial court found in the defendant's lack of serious criminal history, his gainful employment and his being part of the community. The inescapable conclusion is that the defendant has not borne his burden of overcoming the presumed correctness of the trial court's imposition of a 22 year sentence for aggravated rape and eight year sentences for attempted aggravated rape. Accordingly, this issue must fail.

**B**

The final consideration is whether the trial court correctly imposed the defendant's aggravated rape sentence consecutively to his attempted aggravated rape sentences, which were concurrent to each other.

---

[4]A photograph of the victim taken during the time period of the crimes appears as a trial exhibit. The defendant's height and weight are found in the presentence report.

16

In general, consecutive sentencing may be imposed in the discretion of the trial court upon a determination that one or more of the following criteria exist:

(1)     The defendant is a professional criminal who has knowingly devoted himself to criminal acts as a major source of livelihood;

(2)     The defendant is an offender whose record of criminal activity is extensive;

(3)     The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;

(4)     The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;

(5)     The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;

(6)     The defendant is sentenced for an offense committed while on probation; or

(7)     The defendant is sentenced for criminal contempt.

Tenn. Code Ann. § 40-35-115(b) (1990). In State v. Wilkerson, 905 S.W.2d 933, 937-38 (Tenn. 1995), the supreme court imposed two additional requirements for consecutive sentencing -- the court must find consecutive sentences are reasonably related to the severity of the offenses committed and are necessary to protect the public from further criminal conduct. At this time, it is unsettled whether Wilkerson applies to all seven of the statutory categories for consecutive sentencing or only the "dangerous offender" category. See State v. David Keith Lane, No. 03C01-9607-CC-00259, slip op. at 11 (Tenn. Crim. App., Knoxville, June 18, 1997), perm. app. granted (Tenn. 1998). The defendant before us qualifies for a consecutive

17

sentence under either interpretation of <u>Wilkerson</u>.

In this case, we agree with the trial court that the defendant clearly qualifies for consecutive sentencing under section 40-35-115(b)(5).[5] The defendant has three convictions of sexual abuse of a minor. He exploited his step-parental relationship with the victim to accomplish the offenses. The victim had the worst residual scarring from one of the offenses that Dr. Campbell had ever seen. The defendant used fear and intimidation of the victim to conceal his actions. The victim has had to have counseling, and even though he testified seven years after the offenses, he was nevertheless reduced to tears on the witness stand.

Additionally, assuming the applicability of <u>Wilkerson</u>, consecutive sentencing is reasonably related to the severity of these offenses. As detailed above, the defendant took advantage of a step-parental relationship. One of the offenses was brutal enough to result in remarkably severe scarring. The public deserves to be protected from the defendant, whose crimes are egregious, who has shown no remorse, and who has accepted no responsibility for his wrongdoing.

Accordingly we affirm the defendant's convictions of aggravated rape and two counts of attempted aggravated rape by fellatio. We further affirm the defendant's effective sentence of 30 years. We reverse and dismiss the defendant's conviction of attempted aggravated rape by anal penetration based upon the state's failure to prove the elements of the crime beyond a reasonable

---

[5]Although the trial court did not make findings of fact at the time it imposed consecutive sentencing, the court did make findings of fact immediately prior to announcing its sentencing determinations. We disagree with the defendant's contention that the trial court failed to state the reasons why it found section 40-35-115(b)(5) applicable. Moreover, to the extent that the defendant may take issue with the sufficiency of the trial court's findings of fact, we find any error harmless. The record clearly supports the applicability of section 40-35-115(b)(5) as detailed above.

doubt.

_____
CURWOOD WITT, JUDGE

CONCUR:


_____
PAUL G. SUMMERS, JUDGE


_____
JERRY L. SMITH, JUDGE