# NORMAN HALLIBURTON, Plaintiff in Error, v. STATE OF TENNESSEE, Defendant in Error.

Court of Criminal Appeals of Tennessee. Nov. 28, 1967.

Rehearing Denied Jan. 2, 1968.

Certiorari Denied by Supreme Court May 20, 1968.

Frank Simmons, M. Watkins Ewell, Sr., Dyersburg, for plaintiff in error.

Thomas E. Fox, Asst. Atty. Gen., Nashville, for defendant in error.

## OPINION

WALKER, Presiding Judge.

The plaintiff in error, Norman Halliburton, was found guilty in the Circuit Court of Dyer County of the crime of rape and sentenced to life imprisonment in the State Penitentiary. He will be referred to here as the defendant, and the defendant in error, State of Tennessee, as the State.

In his appeal to this court, it is the defendant's principal insistence that there is no evidence to sustain the verdict of the jury and that the evidence preponderates against the verdict and in favor of his innocence.

On January 14, 1967, the prosecuting witness and her husband had been out in the evening with some friends and relatives and returned to their home in South Dyersburg at about 1:00 o'clock on the following morn-

ing. The prosecuting witness had wanted to ride in their car before going home, and she and her husband argued about this after they went to bed. At about 1:30 A.M., he left the house because of this disagreement and went to his mother's home for the rest of the night. He did not lock their front door.

At about 2:00 A.M., the defendant drove up to the house in his car and entered the front door. He testified that he had known the prosecuting witness for some time and had worked on her automobile; that at about 1:00 P.M. on January 14 she had invited him to come to her home that night and had given him directions to it; that he undertook to borrow some money but was unsuccessful; that at about 1:00 A.M. he told his wife he was going for some cigarettes and then went to the home of the prosecuting witness, where he had sexual relations with her several times with her consent; that he was afraid, but she assured him that her husband would not return; that defendant had no weapon and threatened her in no way; that she did not scream or resist in any way and that no force or fear was involved.

On the other hand, the prosecuting witness testified that she had never seen the defendant before this occasion; that she dozed after her husband left and thought he was returning when she heard a car stop.

The defendant entered the house and went to the back door, where he made a noise as if he were unlocking it. She was terribly frightened when she saw him and thought of running out the front door, but she pretended to be asleep. She says she said, "Please don't

hurt me," to which he replied, "I won't hurt you if you don't holler"; that she had heard what happened to women who fought in such circumstances, "they wound up dead"; and she was afraid that might happen to her on that occasion if she resisted. She testified that he was drunk or drinking and got in bed and had sexual intercourse with her and that she did not consent, but submitted only through fear; that she did not cry out, fight or resist him, but that she was afraid to do so. He took off her panties, she says, and had intercourse with her at least four times over a period of two or two and a half hours. He removed his shoes, but otherwise remained fully clothed. When she got up once to go to the bathroom, he followed her and stood in the doorway of the adjoining room. She had an opportunity to see the back of his car, although he warned her not to look at it. She was still frightened when he started to leave and told her that she would have the officers on him and that they would hunt him like a dog. According to her testimony, she was still afraid, and to keep him from hurting her, told him that she would not tell the officers anything. She remained in bed until she heard his car door close.

The defendant returned to his own home, where he told his wife that he thought he had hit something while in his car; that if the police inquired she should tell them that he had been at home since 1:30 A.M.

When she was satisfied the defendant had gone, the prosecuting witness locked the door, dressed herself and left the house in her car. At about 7:00 A.M., she went to the home of a friend, a Mrs. Bevis, and told her of the events of the night. The prosecuting witness re-

ported the occurrence to the sheriff at about 8:00 A.M. Her description of the defendant's car led to his arrest.

In overruling the motion for a new trial, the Court explained in some detail his reasons for denying the grounds based on failure to furnish the defendant a verbatim transcript of the preliminary hearing, failure to quash the jury panel on the ground of systematic exclusion of Negroes, the admission of defendant's clothes in proof without a search warrant and failure of the Court to charge certain special requests.

In regard to the grounds of the motion that the verdict of the jury was contrary to the weight of the evidence and that there was no evidence to sustain the verdict, the Court said:

"* * * Now, for the Court to consider the matter further insofar as this motion is concerned, I would have to step into the rights and prerogatives set up by law for the jury, which is to hear the facts and to give a verdict in accordance with those facts, and I don't believe that the Court is warranted in doing anything like that because I feel it would be a clear abuse of the jury's authority and the jury's prerogative, in cases of this type. Therefore, in line with these comments, the Court overrules the motion for new trial and will give you time to file your Bill of Exceptions."

From these remarks, it is apparent that the trial judge did not weigh the evidence and pass upon the issues. In both civil and criminal cases, the trial judge is the "thirteenth juror" and, in overruling a motion for a new trial, it must appear that he approved the verdict.

In Messer v. State, 215 Tenn. 248, 385 S.W.2d 98, the duty of a trial judge to exercise his function as a thirteenth juror in a criminal case, Curran v. State, 157 Tenn. 7, 13, 4 S.W.2d 957, 958, is quoted as follows:

"In [those] cases the substance of the court's holding was that, under our system, (a) the trial court exercises the function of a thirteenth juror; (b) that he must weigh the evidence, pass upon the issues, and decide whether they are supported by the evidence; (c) where he fails to do this the case will be reversed and remanded for a new trial; and (d) 'that he must be satisfied, as well as the jury' (meaning, in a criminal case, satisfied that the defendant is guilty).

"It is true that the trial court did not disapprove of the verdict, but, upon the other hand, he did not exercise the function of a thirteenth juror, and did not pass upon the issue in the case, viz. the guilt of the defendant.

"For the reasons set forth in the foregoing cases, this court gives great weight to the findings of the trial court upon the issues involved.

"If, in a civil case, where only property rights are involved, it is incumbent upon the trial court to pass upon the issues, how much more important it is for the court to pass upon the issues in a criminal case where the life and liberty of the citizen is involved. Hence the rule requiring the trial court to approve the verdict of the jury in criminal cases."

In Curran v. State, supra, which was also a rape case, the court said:

"In a case of this character, even more than in the ordinary case, the appearance and demeanor of the principal witnesses will necessarily have much influence in the weight and credit to be accorded their testimony. This greatly increases the responsibility of the trial judge."

■ It is not an "invasion of the province of the jury" for the trial judge to weigh the evidence for himself in passing on the motion for a new trial. State ex rel. Richardson v. Kenner, 172 Tenn. 34, 109 S.W.2d 95.

■ In deciding the case, the circuit judge is not required to give any reasons any more than the jury is required to do so, but where he affirmatively states that it would be an abuse of the jury's authority and prerogatives for him to weigh the evidence, the verdict does not have his approval as well as that of the jury.

The judgment will, accordingly, be reversed and the case remanded for a new trial.

The original exhibits filed with the transcript will be returned by the clerk to the trial court in order that they may be used in another trial, if desired.

GILLIAM and OLIVER, JJ., consur.

## ON PETITION TO REHEAR

The plaintiff in error, Norman Halliburton, has filed a petition to rehear in this case.

It is insisted that the Court should have determined

the sufficiency of the evidence and that the Court should have granted the petitioner bail.

We carefully examined the evidence in this case, including the question of fear, but since the case must be retried we do not express our opinion on the evidence in this case, which may not be entirely the same on the second trial.

No request was made for bail in petitioner's previous brief, and it is now denied.

The petition to rehear is overruled.

The Court commends Honorable M. Watkins Ewell, Sr., for his most capable representation of this plaintiff in error by appointment.