**STATE of Tennessee, Appellee,**

v.

**Eddie BRADEN, Appellant.**

Court of Criminal Appeals of Tennessee, at Knoxville.

June 2, 1993.

Permission to Appeal Denied Nov. 1, 1993.

Charles W. Burson, Atty. Gen. Reporter, John B. Nisbet, III, Asst. Atty. Gen., Nashville, William S. Dossett, Dist. Atty. Gen., David C. Jennings, Asst. Dist. Atty. Gen., Knoxville, for appellee.

Herbert S. Moncier, Ann C. Short, Knoxville, for appellant.

## OPINION

JONES, Judge.

The appellant, Eddie Braden, was convicted of two (2) counts of vehicular homicide, a Class C felony, and two (2) counts of aggravated assault, also a Class C felony, by a jury of his peers. The trial court found that the appellant was a standard offender and imposed the following Range I sentences: three (3) years in the Department of Correction for each count of vehicular homicide and two (2) years in the Department of Correction for each count of aggravated assault. The trial court ordered that the sentences for the two counts of vehicular homicide are to be served concurrently; and the sentences for the two counts of aggravated assault are to be served concurrently. However, the trial court ordered that the sentences for vehicular homicide and aggravated assault are to be served consecutively for an effective sentence of five (5) years. The trial court ordered that the appellant is to serve six (6) months in the Knox County Penal Farm; and the balance of the sentence will be served pursuant to the Community Corrections Act of 1985. Tenn. Code Ann. § 40–36–101, et seq.

The convictions of the appellant are affirmed as are the sentences for the individual offenses. However, the sentences are modified to the extent that all of the sentences are to be served concurrently. The sentences are further modified to show that all but six months of the appellant's sentences are suspended and he will serve the balance of the sentences on probation.

The appellant and his friend, Barry Phillips, were residents of Anderson County. On the evening of September 25, 1988, these two individuals decided to travel to Knoxville and patronize a club. Since the appellant was required to be at work at 11:00 p.m. that evening, they travelled to Knoxville in separate vehicles.

A witness who saw Phillips and Braden on Edgemoor Road in Anderson County testified that they were racing as they drove towards Knoxville. The red sports car driven by Phillips was approximately two car lengths behind the gray Ford Mustang being driven by Braden. The witness estimated the speed of the vehicles to be between 80 and 90 miles per hour. Phillips was trying to pass Braden as they passed the apartment building where the witness lived. Shortly thereafter, Phillips and Braden crossed the bridge leading from Anderson County to the Solway community in Knox County.

There is a blind, downhill curve that leads from the bridge to the Solway community. A witness travelling towards Anderson County saw Phillips' vehicle in the right hand lane as it exited the bridge. He then saw Braden's motor vehicle pull from behind Phillips' vehicle, move into the left hand lane, and pass Phillips' vehicle. The witness estimated that Braden was travelling 90 miles per hour.

A witness, who owned a business in the Solway community, heard Braden's vehicle pass his place of business. He testified that the vehicle was travelling "unbelievably fast" and made a "shoosh" sound. He estimated the speed of the appellant's vehicle to be between 90 and 110 miles per hour. The

speed limit is 45 miles per hour. He estimated the speed of the red Ford Mustang being driven by Phillips to be 75 miles per hour.

Aaron Andrew, Geneva Andrew, his wife, and Mrs. Andrew's two children, Eliza and Shantel Satterfield, had been in the parking lot of a service station near the end of the downhill curve leading from the bridge. Mr. Andrew drove his 1972 Maverick to an exit leading from the service station. He intended to cross the lanes of traffic occupied by Phillips and Braden, pull into the median, and, when the traffic cleared, turn left towards Anderson County. Andrew stopped before entering the roadway. He waited while a pickup truck, which had been travelling from the bridge, entered the driveway. Andrew looked to his left, and, since the roadway was clear of oncoming traffic, proceeded to cross the lanes of traffic. Before Andrew had completely cleared the inside lane of traffic, the front of Braden's vehicle struck the left or driver's side of the Maverick. The impact began behind the driver's door and covered the entire left rear of the Maverick. Braden travelled in excess of two hundred feet before his vehicle came to rest.

The drive shaft of the Maverick was knocked loose and was lying beside the vehicle. The rear seat, where the children had been sitting, was found approximately 125 feet from the Maverick. The children, who were wearing seat belts, were thrown across the median and two lanes of traffic. One child was found on the parking lot of a business on the opposite side of the highway from the service station. The other child came to rest on a grassy knoll adjacent to the parking lot. Both children were killed as a proximate result of the injuries sustained when Braden struck the Andrew vehicle. Mr. Andrew sustained a broken jaw, a fractured skull, lost his right eye, lost the function of his right eyelid, his nose had to be reconstructed, and several teeth were either lost or knocked loose. Mrs. Andrew sustained a deep laceration to her ear, lacerations to her head, and a bruised liver.

A state trooper, who was qualified as an automobile reconstruction expert, testified that, based upon the physical evidence, Braden was travelling 93 miles per hour when he struck the Andrew vehicle. An automobile reconstruction expert who testified for the defense opined that Braden was travelling between 62 and 70 miles per hour as he rounded the curve; and he was travelling between 54 and 62 miles per hour when he struck the Andrew vehicle.

Several witnesses testified that a beer can fell out of Braden's vehicle; and there was another beer can, which was partially full, lying on the driver's side floorboard. There was evidence that a person who stopped to assist the injured removed a cooler from the Braden vehicle and threw it across the street. Phillips, who owned the cooler, testified that it was empty. Braden, testifying in support of his defense, admitted that he had drunk three cans of beer; and he had a partially filled can of beer between his legs when the collision occurred. In addition, Braden admitted that he had travelled the highway in question before, he was aware of the blind curve, and he was equally aware that there were businesses at the end of the curve. He stated that he was not aware of the speed limit for the area. Braden testified that he was travelling between 55 and 65 miles per hour prior to colliding with the Maverick.

After Braden had been taken to the hospital, blood was drawn and analyzed pursuant to the directions of his treating physician. The tests were performed on the blood serum as opposed to whole blood. The test revealed 91 milligrams of alcohol in the serum. The Director of Clinical Chemistry for the hospital testified that 91 milligrams would convert to between .0676 and .0762 percentage of alcohol in whole blood. According to the witness, there is a 3% coefficient of variation, margin of error, when the alcohol content of serum blood is converted to the alcohol content of whole blood.

## I.

When an accused challenges the sufficiency of the convicting evidence, this Court must review the record to determine if the evidence adduced at trial is sufficient "to support the finding by the trier of fact of guilt beyond a reasonable doubt." Tenn.R.App.P. 13(e). This rule is applicable to findings of

guilt based upon direct evidence, circumstantial evidence, or direct and circumstantial evidence. *State v. Brown*, 551 S.W.2d 329, 331 (Tenn.1977); *Farmer v. State*, 208 Tenn. 75, 79, 343 S.W.2d 895, 897 (1961).

In determining the sufficiency of the evidence, this Court does not reweigh or reevaluate the evidence. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn.1978). Nor may this Court substitute its inferences for those drawn by the trier of fact from circumstantial evidence. *Liakas v. State*, 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (1956). To the contrary, this Court is required to afford the State of Tennessee the strongest legitimate inferences which may be drawn from the evidence. *State v. Cabbage*, 571 S.W.2d at 835.

Questions concerning the credibility of witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, not this Court. *State v. Cabbage*, 571 S.W.2d at 835. In *State v. Grace*, 493 S.W.2d 474 (Tenn.1973), our Supreme Court said: "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." 493 S.W.2d at 476.

Since a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, *State v. Grace, supra*, the appellant has the burden in this Court of illustrating why the evidence contained in the record is insufficient to support the verdict returned by the trier of fact. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn.1982). This Court will not disturb a verdict of guilt due to the sufficiency of the evidence unless the facts contained in the record, and any inferences which may be drawn from the facts, are insufficient, as a matter of law, for a rational trier of fact to find the accused guilty beyond a reasonable doubt. *State v. Tuggle, supra.*

## II.

Before an accused can be convicted of vehicular homicide, the state is required to prove beyond a reasonable doubt that:

(a) the accused was operating an automobile, airplane, motorboat, or other motor vehicle;

(b) the accused was operating the motor vehicle under circumstances that manifested extreme indifference to the value of human life; and

(c) a person was killed as a result of the manner in which the accused operated the motor vehicle. Tenn.Code Ann. § 39–2–231 (1982) (current version at Tenn.Code Ann. § 39–13–213 (1991)).

Before an accused can be convicted of aggravated assault as a result of the operation of a motor vehicle, the state is required to prove beyond a reasonable doubt:

(a) the accused was operating a motor vehicle;

(b) the accused operated the motor vehicle recklessly under circumstances manifesting extreme indifference to the value of human life; and

(c) a person sustained serious bodily injury as a result of the manner in which the accused operated the motor vehicle. Tenn. Code Ann. § 39–2–101(b)(1) (1982 and Supp. 1988) (current version at Tenn.Code Ann. § 39–13–102 (1991)).

The evidence contained in the record, and the reasonable inferences which may be drawn from the evidence, establishes the elements of both offenses. The evidence established and the appellant judicially confessed that he was operating a motor vehicle when the collision occurred. The evidence clearly established that two children were killed and Mr. and Mrs. Andrew sustained serious bodily injuries within the meaning of the statute. However, the appellant challenges the sufficiency of the evidence regarding the third element of the two offenses, i.e., the operation of his motor vehicle under circumstances manifesting extreme indifference to the value of human life.

Based upon the evidence contained in the record, and the reasonable inferences that can be drawn from that evidence, a trier of fact could find:

(a) the appellant had previously consumed three cans of beer and he was drinking a

fourth can of beer when his vehicle collided with the Andrew vehicle; .

(b) the appellant was aware of the blind curve that led to the Solway community in Knox County, and he was aware that there were businesses at the end of the curve leading from the bridge;

(c) the appellant was racing with his friend, Barry Phillips, and he passed Phillips' vehicle in the blind curve;

(d) the appellant was operating his motor vehicle between 90 and 110 miles per hour; and the appellant lost control of his motor vehicle as he swerved into the left hand lane at an excessive rate of speed to pass Phillips' motor vehicle; and

(e) the Andrew vehicle would have had ample opportunity to cross the two southbound lanes of traffic if the appellant had been operating his motor vehicle at the speed limit. Andrew did not see any vehicles travelling southbound immediately before he pulled from the service station. He could not be expected to contemplate that a vehicle would be travelling southbound in excess of twice the speed limit.

This Court finds that these factors established that the appellant was operating his motor vehicle under circumstances that manifested extreme indifference to the value of human life. In short, the evidence contained in the record was sufficient to support a finding by a rational trier of fact that the appellant was guilty of two counts of vehicular homicide and two counts of aggravated assault beyond a reasonable doubt. Tenn. R.App.P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979).

The appellant's second and third issues are without merit.

### III.

The Knox County Grand Jury returned a twelve count indictment charging the appellant with the following offenses:

(a) Count 1, second degree murder for killing Eliza Satterfield;

(b) Count 2, vehicular homicide, predicated upon the appellant operating a motor vehicle while under the influence, for killing Eliza Satterfield;

(c) Count 3, vehicular homicide, predicated upon the appellant operating a motor vehicle under circumstances that manifested extreme indifference to the value of human life, for killing Eliza Satterfield;

(d) Count 4, second degree murder for killing Shantel Satterfield;

(e) Count 5, vehicular homicide, predicated upon the appellant operating a motor vehicle while under the influence, for killing Shantel Satterfield;

(f) Count 6, vehicular homicide, predicated upon the appellant operating a motor vehicle under circumstances that manifested extreme indifference to the value of human life, for killing Shantel Satterfield;

(g) Count 7, aggravated assault, predicated upon the appellant's willful, knowing and reckless conduct under circumstances manifesting extreme indifference to the value of human life, for inflicting serious bodily injury to Aaron Andrew;

(h) Count 8, aggravated assault, predicated upon an assault with a deadly weapon, i.e., a motor vehicle, for inflicting bodily injury to Aaron Andrew;

(i) Count 9, aggravated assault, predicated upon the appellant operating a motor vehicle while under the influence, for inflicting serious bodily injury to Aaron Andrew;

(j) Count 10, aggravated assault, predicated upon the appellant's willful, knowing and reckless conduct under circumstances manifesting extreme indifference to the value of human life, for inflicting serious bodily injury to Geneva Satterfield Andrew;

(k) Count 11, aggravated assault, predicated upon an assault with a deadly weapon, i.e., a motor vehicle, for inflicting bodily injury to Geneva Satterfield Andrew; and

(*l*) Count 12, aggravated assault, predicated upon the appellant operating a motor vehicle while under the influence, for inflicting serious bodily injury to Geneva Satterfield Andrew.

The state attempted to prove all of the counts of the indictment. As to Counts 2, 5,

9, and 12, which alleged that the appellant was operating a motor vehicle under the influence as an element of the offense, the state presented several witnesses who testified that there was a beer can next to the appellant's motor vehicle and another beer can on the driver's side floor board. One witness testified that the beer can inside the vehicle was "open." A state trooper testified that the beer can inside the vehicle was "slightly chilled" and "partially filled." Another witness, who inquired about the appellant's injuries, testified that he "noticed the smell of alcohol" emanating from "his person and ... his breath."

Initially, counsel thought that the blood alcohol contained in the appellant's blood was .091. It was assumed that the technician's test was predicated upon a whole blood analysis. Shortly before the trial was to commence, defense counsel discovered that the technician had tested the serum in the blood, not the whole blood; and, as a result, the whole blood alcohol content, when converted, was much less than previously thought. It is obvious from the record that the assistant district attorney general was confused about this scientific revelation; and he called the appellant's witness, the director of clinical chemistry, to convert the serum blood alcohol content to the whole blood alcohol content.[1] The director testified that the .091 converted to between .0676 and .0762. There is a 3% coefficient variation, margin of error, in making the conversion.

■ The trial court, concerned about the margin of error factor in the conversion, the percentage of whole blood alcohol content, and the absence of lay testimony concerning the appellant's impairment, granted the appellant's motion for a judgment of acquittal as to Counts 2, 5, 9, and 12 of the indictment, i.e., the counts which required the state to prove the appellant was operating a motor vehicle while under the influence beyond a reasonable doubt. The appellant then moved the trial court for the entry of a mistrial on the ground the state's introduction of and

repeated emphasis on the defendant's consumption of alcohol would prevent the trier of fact from returning an impartial verdict on the remaining counts of the indictment. The trial court denied the motion. In ruling, the trial court stated that the evidence regarding the appellant's consumption of alcohol before and at the time of the collision was probative of whether the appellant was operating his motor vehicle under circumstances that manifested extreme indifference to the value of human life. The appellant contends in this Court that the trial court committed error of prejudicial dimensions in denying his motion for a mistrial; and, further, holding that the evidence was admissible as to the remaining counts of the indictment.

The trial court properly denied the appellant's motion for a mistrial. The appellant's consumption of intoxicating beverages before the collision and the percentage of alcohol in the appellant's blood was a factor that the jury could consider in determining whether the appellant was operating his motor vehicle "under circumstances manifesting extreme indifference to the value of human life." In other words, this evidence was both relevant and probative of this element of the offenses.

■ The fact that the initial determination made by the lab technician was based on the alcohol content of blood serum as opposed to whole blood, and that an expert had to convert the alcohol content to the percentage that would have been found in the whole blood, went to the weight of the evidence as opposed to the admissibility of the evidence. The expert candidly admitted that there was a margin of error in the conversion; and he told the jury what the margin of error was in terms of percentages.

An analysis of the jury's verdicts indicates that it returned fair and just verdicts; and the verdicts were predicated upon the facts in evidence. The jury acquitted the appellant of two counts of murder in the second degree. The jury further acquitted the appellant of two counts of aggravated assault predicated upon the concept that the motor

---

1. This conversion was also made in the case of *State v. Carol H. Dougherty,* 1989 WL 1142, Sullivan County No. 827 (Tenn.Crim.App., January 9, 1989, Knoxville). *See Commonwealth v. Dagnon,* 413 Pa.Super. 281, 605 A.2d 360 (1992) (result of blood test performed on serum rather than whole blood is admissible after conversion to whole blood alcohol content).

vehicle driven by the appellant was a dangerous weapon. Moreover, the jury may have completely discarded this testimony and based its verdict on the fact that Phillips and the appellant were racing at extremely high rates of speed as they drove around the blind curve; and the appellant lost control of his vehicle as he passed Phillips in the left hand lane.

The appellant's first issue is without merit.

## IV.

The appellant contends that the trial court committed error of prejudicial dimensions in permitting the state to play a news video tape of events at the scene shortly after the collision in question. He further contends that the trial court erred in permitting the state to introduce a photograph taken after the collision which contained white crosses that had been erected. He argues that the photographs were calculated to arouse the sympathy and passion of the jury and were unduly prejudicial; and the introduction of this demonstrative evidence deprived him of a fair trial.

The appellant cites Rule 403, Tenn. R.Evid., and § 403.5 of the treatise *Tennessee Law of Evidence,* second edition. While the appellate decisions of this Court are replete with holdings concerning the introduction of demonstrative evidence, more particularly video tapes and photographs, the appellant does not refer this Court to any of the applicable decisions.

 Before a photograph or video tape may be admitted as evidence, it must be relevant to an issue that the jury must decide; and the probative value of the photograph or video tape must outweigh any prejudicial effect that it may have upon the trier of fact. *State v. Aucoin,* 756 S.W.2d 705, 710 (Tenn.Crim.App.1988), *cert. denied,* 489 U.S. 1084, 109 S.Ct. 1541, 103 L.Ed.2d 845 (1989). The question of whether a photograph or video tape should be introduced into evidence addresses itself to the sound discretion of the trial court. *State v. Banks,* 564 S.W.2d 947, 949 (Tenn.1978). This Court will not interfere with the exercise of this discretion absent clear abuse appearing on the face of the record. *State v. Banks, supra; State v. Aucoin, supra.*

 In the case *sub judice* the trial court did not abuse its discretion in admitting the video tape and photographs into evidence. The video tape, made from a helicopter by a local television station, established the terrain and where the vehicles came to rest following the collision. These facts were relevant to the jury's inquiry regarding the issues raised by the parties. The photographs depicting the crosses were taken when the state trooper, who testified as an expert in the reconstruction of motor vehicle accidents, was making the requisite tests to determine speed and how the accident occurred. It is difficult to find the crosses in the photograph because it is an aerial view taken from an airplane or helicopter. The average person would not know that crosses were depicted in the photograph unless someone brought them to his or her attention.

The appellant's ninth issue is without merit.

## V.

The appellant sustained serious injuries when his car collided with the Andrew vehicle. He was subsequently taken to the University of Tennessee Medical Center. While he was being treated in the emergency room of the hospital, blood was drawn and sent to the chemical laboratory. When the blood was received in the chemical laboratory, there was a label affixed to the vial containing the appellant's name. A form accompanying the vial contained the appellant's name, the fact that he was in the emergency room, the name of the appellant's doctor, and the tests the lab technician was to perform. This form and the results of the tests were contained in the medical records of the hospital; and both documents were introduced into evidence. The appellant was the only person by the name of "Braden" treated in the emergency room on the evening in question. In addition, the blood was drawn for the purpose of treating the appellant—it was not drawn at the request of a law enforcement officer or for forensic purposes.

The form did not contain the name of the person who drew the blood from the appellant. The lab technician testified that when the name of the person who drew the blood did not appear on the form accompanying the vial, it was the doctor treating the patient who drew the blood. The treating physician was apparently a member of a reserve medical team that was activated for the Persian Gulf War. He was proudly serving his country in Saudi Arabia when this case was tried.

The appellant contends that the state failed to establish the chain of custody of the vial of blood tested by the technician. He argues that the results of the blood test should not have been admitted into evidence.

■ The requirement that a party must establish a chain of custody before introducing real evidence is to demonstrate that there has been no tampering, loss, substitution, or mistake with respect to the evidence. *Orr v. State*, 472 N.E.2d 627, 630 (Ind.App. 1984). In the case *sub judice*, the evidence contained in the record was sufficient to permit the alcohol blood test to be introduced into evidence. There is no indication of tampering, loss, substitution, or a mistake associated with the vial of blood received by the lab technician. As previously stated, the vial and accompanying form contained the appellant's name, the only "Braden" treated in the emergency room that night. The form also noted that Braden was a patient in the emergency room, his doctor's name, and the date and time of the request. In short, the trial court did not abuse its discretion in permitting the state to introduce this evidence. *See Ritter v. State*, 3 Tenn.Crim.App. 372, 462 S.W.2d 247, 249 (1970).

The remaining contentions of the appellant included in this issue have been answered in section III of this opinion.

The appellant's sixth issue is without merit.

## VI.

Before the defense rested, the trial court asked counsel about the propriety of permitting the jury to retain the trial exhibits in the jury room while it deliberated. Defense counsel advised the trial court that the appellant would agree to permit the jury to retain the exhibits during deliberations. However, the assistant district attorney general advised the trial court that the state would not agree to this procedure. The trial court subsequently ruled that the exhibits could not be taken to the jury room.

The appellant contends that the trial court's ruling denied him a meaningful opportunity to present a competent defense. However, the defendant fails to cite a single case which supports this theory.

■ The appellate courts of this State have consistently ruled that jurors may not take exhibits into the jury room while they deliberate absent the consent of *both parties*. In *Watkins v. State*, 216 Tenn. 545, 552, 393 S.W.2d 141, 144 (1965), our Supreme Court said: "It has been the practice in this State, from the inception of judicial decisions in the trial of cases before a jury, that the jury is not permitted to take exhibits, diagrams and things of that kind to the jury room with them unless consented to by both parties." In *State v. Wright*, 618 S.W.2d 310, 319 (Tenn.Crim.App.1981), this Court said: "A jury is not permitted to take exhibits to the jury room, absent consent from the parties." In *State v. Flatt*, 727 S.W.2d 252, 254 (Tenn. Crim.App.1986), this Court said: "Trial exhibits should not be carried into the jury room during deliberations absent consent from the parties." This Court also noted: "If the rule in *Watkins v. State*, [s]upra, is to be modified or discarded, it is for the Supreme Court, who adopted the rule, to do so." 727 S.W.2d at 255. *See Brazelton v. State*, 550 S.W.2d 7, 10 (Tenn.Crim.App. 1974).

■ The appellant assails the reasoning in *Watkins* and *Flatt*; and he asks this Court to reconsider the holding in these cases. As this Court correctly noted in *Flatt*, our Supreme Court, not this Court, must make any change in the rule. This Court does not have the authority to revise, alter, modify, modernize or otherwise change a common law rule created by the Supreme Court. *See Barger v. Brock*, 535 S.W.2d 337, 340–341 (Tenn.1976); *Bloodworth v. Stuart*, 221 Tenn. 567, 572, 428 S.W.2d 786, 789 (1968); *State v.*

*Davis,* 654 S.W.2d 688, 690 (Tenn.Crim.App. 1983). *See Richardson v. Johnson,* 60 Tenn. App. 129, 136, 444 S.W.2d 708, 711 (1969).

It is claimed that Tenn.R.Evid. 611(a) alters this rule. This rule provides that the "court shall exercise appropriate control over the presentation of evidence and conduct of the trial when necessary to avoid abuse by counsel." The appellant's reliance on this rule is misplaced. The rule in question has absolutely nothing to do with the "presentation of evidence." Consequently, this rule does not control the question of whether exhibits should be permitted in the jury room.

The appellant also asks this Court to adopt the applicable American Bar Association Standards for Criminal Justice. *See A.B.A. Standards for Criminal Justice, Trial by Jury,* § 15–4.1 (2nd ed. 1980). This standard was rejected in *Flatt;* and this Court refuses to adopt the standard in the case *sub judice.*

This Court is of the opinion and finds that the appellant was permitted a meaningful opportunity to present a competent defense within the meaning of the United States and Tennessee Constitutions. Moreover, the right to have the jury take the exhibits into the jury room is not within the scope of or guaranteed by the constitutional provisions which guarantee that the accused is entitled to a meaningful opportunity to present a competent defense.

The appellant's fifth issue is without merit.

## VII.

The appellant contends that the trial court committed error of prejudicial dimensions in permitting extrinsic evidence of a prior inconsistent statement made by Barry Phillips. Phillips testified that he and Braden were travelling between 55 and 65 miles per hour immediately prior to the collision. In rebuttal a witness testified that Phillips stated Braden was travelling 85 miles per hour while trying to contact Braden's relatives.

■ The phrase "rebuttal evidence" may be defined as evidence "which tends to explain or controvert evidence produced by an adverse party." *Cozzolino v. State,* 584 S.W.2d 765, 768 (Tenn.1979). This phrase encompasses "[a]ny competent evidence which explains or is a direct reply to, or a contradiction of, material evidence introduced" by an adverse party. *Nease v. State,* 592 S.W.2d 327, 331 (Tenn.Crim.App.1979). Rebuttal evidence is properly admitted for the purpose of impeaching a witness through the use of a prior inconsistent statement. *Monts v. State,* 218 Tenn. 31, 57–58, 400 S.W.2d 722, 733–734 (1966); *Gray v. State,* 194 Tenn. 234, 247–248, 250 S.W.2d 86, 92 (Tenn.1952); *Beasley v. State,* 539 S.W.2d 820, 824 (Tenn.Crim.App.1976). *See* Tenn. R.Evid. 613(b).

■ Questions concerning the admission or rejection of rebuttal evidence rest within the sound discretion of the trial court; and an appellate court will not interfere with the exercise of this discretion unless it is clear on the face of the record that the trial court has abused its discretion. *State v. Scott,* 735 S.W.2d 825, 828 (Tenn.Crim.App.1987). In the case *sub judice* one of the prime issues was the speed of the appellant's vehicle prior to the collision in question. Barry Phillips testified that the appellant was travelling 55 to 65 miles per hour prior to the collision. Therefore, it was proper for the rebuttal witnesses, who talked to Phillips after the collision, to testify that Phillips told them that the appellant was driving 85 miles per hour prior to the collision. This evidence was both relevant and material to one of the issues that the jury was required to decide, i.e., the credibility of Phillips as a witness. In summary, the trial court did not abuse its discretion in permitting the state to introduce the prior inconsistent statement of Phillips as rebuttal evidence.

The appellant's seventh issue is without merit.

## VIII.

The appellant contends that the trial court committed error of prejudicial dimensions in failing to instruct the jury on the meaning of "knowing" and "willfully," as requested; and in failing to instruct the jury that the conduct of the driver of the Andrew vehicle was entitled to consideration in determining

whether the collision was the result of an unavoidable accident or criminal conduct.

 When the charge of the trial court is complete, and encompasses the special requests submitted by an accused, the trial court is not required to incorporate the special requests into the charge given the jury. *Bostick v. State,* 210 Tenn. 620, 628, 360 S.W.2d 472, 477 (1962); *State v. Aucoin,* 756 S.W.2d 705, 715 (Tenn.Crim.App.1988), *cert. denied,* 489 U.S. 1084, 109 S.Ct. 1541, 103 L.Ed.2d 845 (1989); *State v. Thomas,* 755 S.W.2d 838, 843–844 (Tenn.Crim.App.1988). Also, when words and terms are in common use and are such as can be understood by persons of ordinary intelligence, it is not necessary, in the absence of anything in the charge to obscure their meaning, for the court to define or explain the terms. *State v. Black,* 745 S.W.2d 302, 306 (Tenn.Crim.App. 1987) (the words "open" and "openly" contained in the statute proscribing rebellion with intent to kill or escape); *State v. Rollins,* 605 S.W.2d 828, 831–832 (Tenn.Crim. App.1980) ("kidnapping"); *Robinson v. State,* 513 S.W.2d 156, 157–158 (Tenn.Crim.App. 1974) ("aiding and abetting"). *See State v. King,* 718 S.W.2d 241, 249 (Tenn.1986) ("to aggravate" and "torture"); *State v. Groseclose,* 615 S.W.2d 142, 147–148 (Tenn.1981), *cert. denied,* 454 U.S. 882, 102 S.Ct. 366, 70 L.Ed.2d 193 (1981) ("mitigating").

 When the charge given to the jury is read in its entirety, the substance of the special requests made by the appellant is included in the charge. For instance, the trial court charged the jury on the meaning of the word "willfully" when instructing the jury on the offense of murder second degree. The trial court was not required to give a second instruction on the meaning of this term relative to the offense of aggravated assault. The instruction given was as follows: "An act is done willfully if done voluntarily and intentionally and with the specific intent to do something the law forbids. That is, in this case, the defendant must have intended to drive his automobile in violation of the law." This definition was equally apropos to the offense of aggravated assault.

The trial court also charged the jury: "Allowance must be made for misadventure and accident, as distinguished from culpable negligence which would warrant condemnation as a criminal act." This language, when taken together, constitutes the substance of the special request defining the term "knowingly." Similarly, this instruction conveyed the substance of the appellant's request concerning the conduct of the victims' vehicle insofar as it explained that "misadventure and accident" was not criminal conduct.

If the trial court can be said to have erroneously omitted these instructions, the error was harmless in view of the overwhelming evidence of guilt and the scope of the charge given by the trial court. Tenn.R.App.P. 36(b).

The appellant's eighth issue is without merit.

### IX.

 The appellant contends that this case should be remanded to the trial court to determine whether the trial court, as the thirteenth juror, would grant him a new trial. He argues that while this case was tried before the effective date of Rule 33(f), Tenn. R.Crim.P., this issue was preserved in his motion for a new trial.[2]

The motion for a new trial alleges: "The verdict of guilty in this case on Counts 3, 6, 7, and 10 is contrary to the weight of the evidence for which a new trial should be granted." The order denying the motion for a new trial and post-trial judgment of acquittal states that the "Court has carefully considered each of the issues raised by the Defendant.... The Court respectfully denies Defendant's Motion for Judgment of Acquittal and Motion for New Trial." The hearing on the motion for a new trial is not included in the record transmitted to this Court.

In *State v. Enochs,* 823 S.W.2d 539, 540 (Tenn.1991), the Supreme Court held that Rule 33(f) is to be applied retroactively to all cases which were pending on direct review or

---

**2.** Rule 33(f) became effective July 1, 1991. The motion for a new trial was overruled May 10, 1991; and the notice of appeal was filed in the cause the same day.

not yet final. Since *Enochs* was pending on direct review when Rule 33(f) became effective, the Supreme Court applied the rule and remanded the cause to the trial court for a new trial. This rule was reaffirmed in *State v. Barone*, 852 S.W.2d 216 (Tenn.1993). Since this case was pending direct review in this Court when Rule 33(f) became effective, the provisions of the rule are applicable here.

The trial court in both *Enochs* and *Barone* commented on the record that if the thirteenth juror rule was applicable, a new trial would have been granted. In the case *sub judice*, the trial court did not make such a statement. The trial court denied the appellant's motions for judgment of acquittal regarding the offenses in question after the state's case in chief, after all of the proof, and post-trial. As previously stated, the order of the trial court denying the motion for a new trial simply states that the trial court denied all of the grounds raised. The record does not contain a transcript of the hearing incident to the motion for a new trial.

When a trial court simply overrules a motion for a new trial, it presumably approves the verdicts of the jury. *Temples v. State*, 183 Tenn. 531, 539, 194 S.W.2d 332, 335 (1946). In *Temples* the Supreme Court said:

> In view of the unusual circumstances of the instant case, it is not surprising that the trial judge stated that the defendant was acting under great provocation.
>
> In *Curran v. State*, 157 Tenn. 7, 4 S.W.2d 957 [1928], the Court held that under our system the trial court is the forum in which the guilt or innocence of a defendant is primarily determined; and the presiding judge wields the scales of justice between the State and the defendant, and where, in his opinion, the defendant is not proved guilty, it is his duty to grant him a new trial. *When the trial judge simply overrules a motion for a new trial presumably he approves the verdict,* but such is not the case where he affirmatively states that he passes upon neither the guilt nor innocence of the defendant, and is glad that such responsibility does not rest upon him. There is nothing to indicate that the trial judge did not approve the degree of homicide which the defendant was convicted of.

We cannot construe his language to mean that he disapproved the verdict.

183 Tenn. at 539, 194 S.W.2d at 335 (Emphasis added). *See Messer v. State*, 215 Tenn. 248, 253, 385 S.W.2d 98, 100–101 (1964); *Halliburton v. State*, 1 Tenn.Crim.App. 39, 428 S.W.2d 41, 44 (1967).

This Court may presume from the order entered by the trial court that he approved the verdicts returned by the jury. Furthermore, this Court must presume that the ruling of the trial court was correct since the record does not contain a transcript of the hearing on the motion for a new trial. *See State v. Locke*, 771 S.W.2d 132, 138 (Tenn. Crim.App.1988); *State v. Roberts*, 755 S.W.2d 833, 836 (Tenn.Crim.App.1988); *State v. Burton*, 751 S.W.2d 440, 450–451 (Tenn.Crim. App.1988).

The appellant's fourth issue is overruled.

## X.

The appellant contends that the trial court should have found that he was an especially mitigated offender and sentenced him accordingly. He also contends that the trial court abused its discretion in ordering that the sentences imposed for vehicular homicide and the sentences imposed for aggravated assault are to be served consecutively.

### A.

▮▮ Whether an accused should be sentenced as an especially mitigated offender is a question which rests within the sound discretion of the trial court. *State v. Buttrey*, 756 S.W.2d 718, 722 (Tenn.Crim.App.1988). Tenn.Code Ann. § 40–35–109(a) states that "[t]he court *may* find the defendant is an especially mitigated offender, if: (1) The defendant has no prior felony convictions; and (2) The court finds mitigating, but no enhancement factors." (Emphasis added). The word "may", when used in a statute or rule, "usually indicates that the act to which it refers is discretionary, rather than mandatory, and will be so construed unless the context indicates a different meaning." *Halfacre v. State*, 112 Tenn. 609, 611, 79 S.W. 132, 133 (1904). If the Tennessee General Assembly had intended for sentencing within

this classification to be mandatory, it would have used the word "shall" as it did in other provisions of the Tennessee Criminal Sentencing Reform Act of 1989. *See State v. Buttrey, supra.*

 The appellant did not qualify for sentencing as an especially mitigated offender. The trial court found that an enhancing factor existed in this case. Moreover, if the appellant could have been sentenced as an especially mitigated offender, the trial court did not abuse its discretion in refusing to do so given the serious nature of the offenses for which the appellant stands convicted. *State v. Buttrey, supra.*

### B.

 In ordering that the sentences imposed for vehicular homicide were to be served consecutively to the sentences imposed for aggravated assault, the trial court stated:

Now, with that out of the way, we must address whether or not this is a case that is appropriate for consecutive sentencing. Obviously, Mr. Braden will be sentenced on each of the four counts of which he stands convicted. The controlling statute, as clearly pointed out by counsel, is [Tenn. Code Ann. §] 40–35–115.

Mr. Jennings implores the Court to find that Mr. Braden is a dangerous offender, whose behavior indicates little or no regard for human life, and that he had no hesitation about committing a crime in which the risk to human life is high.

In order to impose consecutive sentencing, the Court would have to find that Mr. Braden is a dangerous offender, with little or no regard for human life, or that he had little hesitation or no hesitation about committing a crime in which the risk to human life is high.

I have done that before, I did it on Darren Guhy. As Mr. Jennings clearly points out, though, the Guhy case was factually far different than this case, although the end results are the same, in that two innocent individuals were killed. Both females. The ages are the only difference. Other factors were involved in the case of Darren

Guhy that this Court found that caused the need for consecutive sentencing.

The question is that, if one operates a motor vehicle while at the same time using alcoholic beverages and operates that motor vehicle on the public thoroughfares of this community, this Court is of the opinion that that makes one a dangerous offender per se.

Resultingly, the Court finds that Mr. Braden is a dangerous offender, and consecutive sentencing is appropriate.

In *State v. Woods,* 814 S.W.2d 378 (Tenn. Crim.App.1991) this Court set forth the criteria that must be present before a trial court can order that the multiple sentences of an accused are to be served consecutively based upon a finding that the accused is a dangerous offender. What the Court said in *Woods* is applicable in this case:

A defendant qualifies as a dangerous offender when his "behavior indicates little or no regard for human life, and [there is] no hesitation about committing a crime in which the risk to human life is high." Tenn.Code Ann. § 40–35–115(b)(4).... *See Gray v. State,* 538 S.W.2d 391, 393 (Tenn.1976).... However, [a finding that a defendant is a dangerous offender], standing alone, will not justify consecutive sentencing. *See State v. Taylor,* 739 S.W.2d 227 (Tenn.1987); *Gray v. State,* 538 S.W.2d at 393. As the Supreme Court said in *Gray:* "This does not mean that *all* defendants convicted of several counts of a dangerous offense ... should be consecutively sentenced.... The decision to impose consecutive sentences when crimes inherently dangerous are involved should be based upon the presence of aggravating circumstances and not merely on the fact that two or more dangerous crimes were committed." Furthermore, consecutive sentencing is inappropriate unless the trial court expressly finds "that confinement for such a term is necessary in order to protect the public from further criminal conduct by the defendant" because the ultimate purpose of consecutive sentencing is the protection of the public. *Gray v. State,* 538 S.W.2d at 398.

In summary, a defendant may not be required to serve multiple sentences consecutively on the ground he is a dangerous offender unless the record establishes that: (a) the defendant's behavior indicates "little or no regard for human life," and he did not hesitate "about committing a crime in which the risk to human life is high," Tenn. Code Ann. § 40–35–115(b)(4) ...; (b) the circumstances surrounding the commission of the offense are aggravated, *Gray v. State,* 538 S.W.2d at 393; (c) confinement for an extended period of time is necessary to protect society from the defendant's unwillingness to "lead a productive life and [his] resort to criminal activity in furtherance of [his] anti-societal lifestyle," *Gray v. State,* 538 S.W.2d at 393; and (d) the aggregate length of the sentences, if consecutive sentencing is ordered, reasonably relates to the offenses of which the defendant stands convicted. *State v. Taylor,* 739 S.W.2d at 230.

814 S.W.2d at 380–381.

This Court is of the opinion and finds that the trial court abused its discretion in ordering that the appellant's sentences should be served consecutively. The record fails to establish aggravated circumstances in the commission of the offense. As previously noted, the state was required to establish that the appellant operated his motor vehicle under circumstances that manifested extreme indifference to the value of human life to support a conviction for the vehicular homicide and aggravated assault counts of which the appellant was convicted.

Consecutive sentencing was not required to protect society from the defendant's unwillingness to lead a productive life and his resort to criminal activity in furtherance of his anti-societal lifestyle. The record reflects that in 1988 the appellant was handled for the possession of alcohol while under the legal age. The disposition shows a deferral with the appellant placed on probation for ninety days. In addition, he is a high school graduate, and he has completed courses in building trades and machine shop at the Anderson County Center for Occupational Development. He has no history of alcohol or drug abuse. He has been employed since he graduated from high school.

The trial court placed great emphasis on the fact that the appellant was "drinking and driving." There was no evidence that the appellant was under the influence when the collision occurred. Moreover, the trial court entered a judgment of acquittal on all four counts that required a showing that the appellant was driving while under the influence. One of the problems facing the trial court was the margin of error in the blood alcohol level when the expert witness converted the blood serum level to the whole blood level.

The judgment of the trial court should be amended to show that the sentences for vehicular homicide and the sentences for aggravated assault are to be served concurrently rather than consecutively.

## XI.

As previously noted, the trial court ordered that the appellant must serve six months of his sentences in the Knox County Penal Farm with the remainder of his sentence served pursuant to the Community Corrections Act of 1985. This was an illegal sentence.

The state did not raise this issue in the trial court; and it is not raised as an issue in this Court. However, this Court has the authority as well as the duty to address this issue on its own motion.

While appellate review is generally limited to the issues presented for review, the appellate courts of this State have been empowered to consider issues which have not been presented for review. *See State v. Goins,* 705 S.W.2d 648 (Tenn.1986); *State v. Seagraves,* 837 S.W.2d 615 (Tenn.Crim.App. 1992); *State v. Maynard,* 629 S.W.2d 911 (Tenn.Crim.App.1981); *State v. Harless,* 607 S.W.2d 492 (Tenn.Crim.App.1980). Rule 13(b), Tenn.R.App.P., provides that an appellate court "may in its discretion consider other issues in order, among other reasons: (1) to prevent needless litigation, (2) to prevent injury to the interests of the public, and (3) to prevent prejudice to the judicial process." Rule 52(b), Tenn.R.Crim.P., provides

that this Court may notice *plain error* "at any time, even though not raised in the motion for a new trial or assigned as error on appeal. ..." *See State v. Ogle,* 666 S.W.2d 58 (Tenn.1984); *Veach v. State,* 491 S.W.2d 81 (Tenn.1973); *Herron v. State,* 3 Tenn. Crim.App. 39, 456 S.W.2d 873 (1970). The correction of an illegal sentence is a matter which this Court may and should address on its own motion. *See Johnson v. State,* 580 S.W.2d 789 (Tenn.Crim.App.1978).

 An accused who is convicted of a crime of violence is not eligible for sentencing pursuant to the Community Corrections Act. *State v. Birge,* 792 S.W.2d 723, 725 (Tenn.Crim.App.1990); *State v. Meeks,* 779 S.W.2d 394, 397 (Tenn.Crim.App.1988). In *Birge* this Court held that the accused, who was convicted of murder in the second degree and aggravated assault resulting from a motor vehicle collision, was not eligible for sentencing pursuant to the Community Corrections Act. Recently, this Court held that a person who is convicted of vehicular homicide or vehicular assault is not eligible for sentencing pursuant to the Act. *State v. Robert Glen Grissom, III,* 1993 WL 64276, Henderson County No. 02–C–01–9204–CC–00076 (Tenn.Crim.App., March 10, 1993, Jackson) (vehicular homicide); *State v. Vickie C. Evans,* Jefferson County No. 03–C–01–9112–CR–00411 (Tenn.Crim.App., April 22, 1992, Knoxville) (vehicular assault).

The appellant was eligible for the suspension of his sentence and probation. This Court will defer to the judgment of the trial court[3] and remand this case to the trial court for the purpose of entering an order requiring the appellant to serve six (6) months of his sentences in the Knox County Penal Farm, suspend the balance of the sentences, and place the appellant on probation. The trial court may within the exercise of its discretion impose any of the conditions set forth in Tenn.Code Ann. § 40–35–303(d) and –304 as conditions of probation.

SCOTT, P.J., and BIRCH, J., concur.

---

**3.** In reviewing the manner of the service of a sentence, this Court is required to "conduct a *de novo* review of the record of such issues." In doing so this Court is required to presume that "the determinations made by the trial court from which the appeal is taken are correct." Tenn. Code Ann. § 40–35–401(d).