# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON

### Assigned on Briefs May 3, 2011

## STATE OF TENNESSEE v. JAMES JOHNSON

**Direct Appeal from the Criminal Court for Shelby County**
**No. 09-00747      James C. Beasley, Jr., Judge**

---

**No. W2010-01674-CCA-R3-CD  - Filed August 18, 2011**

---

The appellant, James Johnson, pled guilty in the Shelby County Criminal Court to vehicular homicide by intoxication, a Class B felony, and received a ten-year sentence with the manner of service to be determined by the trial court. After a sentencing hearing, the trial court ordered the appellant to serve the sentence in confinement. On appeal, the appellant contends that the trial court erred by denying his request for alternative sentencing. Based upon the record and the parties' briefs, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the Court, in which D. KELLY THOMAS, JR., J., and DAVID H. WELLES, Sp.J., joined.

Joseph S. Ozment (at trial and on appeal) and Larry Copeland (at trial), Memphis, Tennessee, for the appellant, James Johnson.

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Edith Sellers, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I.  Factual Background

The record reflects that the Shelby County Grand Jury indicted the appellant for aggravated vehicular homicide, a Class A felony; vehicular homicide by intoxication, a Class B felony; and vehicular homicide, a Class C felony. All of the charges resulted from the death of the victim, Manuel Guzman. The appellant agreed to plead guilty to vehicular homicide by intoxication in exchange for a ten-year sentence with the manner of service to

be determined by the trial court.

At the appellant's guilty plea hearing, the State presented the following factual account of the crime: On the afternoon of September 21, 2008, the appellant was traveling east on Orchi Road in his 1994 Chevrolet truck. The appellant stopped at a stop sign. When he pulled away from the stop sign in order to turn left onto Jackson Avenue, he pulled in front of a motorcycle being driven by the victim. The victim had the green light and hit the appellant's truck on the driver's side. The appellant submitted to a blood test, which showed his blood alcohol concentration was greater than .20 percent. The victim was transported to The Med and died of his injuries on October 8, 2008.

The appellant requested that the trial court sentence him to probation, and the trial court scheduled a sentencing hearing. At the hearing, Martha Sanders, the appellant's mother, testified that the appellant had cancer, throat problems, and curvature of the spine. She said that she regretted the appellant's wreck with the victim and was "truly, truly sorry" but that the appellant would never hurt anyone deliberately. She acknowledged that the appellant had a problem with alcohol but said that he stayed at home most of the time and was not allowed to drink in her home. She said that if she learned the appellant was intoxicated somewhere, she would pick him up and drive him home. The appellant was diagnosed with skin cancer when he was nineteen years old and had been living with cancer since that time. The cancer recently had spread to his lymph nodes and throat, and the appellant was taking radiation treatments. She said that according to the appellant's doctor, the appellant's prognosis was not good.

John Johnson, the appellant's brother, testified that he and the appellant lived with their mother. Regarding the appellant's alcohol problem, he said, "We were pretty much taught to drink when we were kids, uncles and dads and everybody passing the bottle around, big joke." Johnson said he used to consume alcohol but stopped years ago. He said the appellant still drank alcohol one afternoon per week; that he talked with the appellant "all the time" about the appellant's drinking problem; and that he prayed with the appellant, "trying to lead him to the Lord to get off of it." He said the appellant had emotional problems and was self-conscious about his appearance due to "the surgeries and everything." He said that the appellant did not drink alcohol as much as he used to and that the appellant was "doing his best to fight the battle." Johnson said he would "do [his] best" to stop the appellant from drinking if the appellant received probation.

On cross-examination, Johnson testified that he thought the appellant had accepted that the appellant had a drinking problem but that the appellant had not accepted "what it takes to get over it yet." The appellant completed a program through Harbor House several years ago but currently was not attending Alcoholics Anonymous (AA). Johnson said that

the appellant did not drink alcohol every day and that the appellant "just goes out maybe in the afternoon for a couple of hours down to the local tavern." The appellant no longer drove a vehicle; his mother picked him up most of the time.

The then fifty-seven-year-old appellant testified, "I know I got a problem, drinking problem. . . . I'm trying to do the best to get over it." When asked if he was an alcoholic, the appellant said, "Well, I don't really -- the way I've always considered [an] alcoholic is you drink every day until you get drunk. I don't do that." He said that he did not drink alcohol nearly as much as he used to and that he used alcohol as "a crutch" due to his medical problems. The appellant was diagnosed with skin cancer when he was eighteen or nineteen years old and had been living with it for thirty-eight years. Some of his skin cancer tumors were removed surgically, and some were removed with a laser. Six months before the sentencing hearing, the appellant learned the cancer was in his lymphatic system. At the time of the hearing, the appellant was receiving radiation treatments five days per week. He said that he was sorry for the wreck and the victim's death and that he thought he could stop drinking alcohol if the trial court gave him probation. He said that he was scared "medically and everything" and that he was scared of dying.

On cross-examination, the appellant testified that he was scheduled for fifteen additional radiation treatments. He acknowledged that he did not know about the cancer in his throat in 2008.

According to the appellant's presentence report, the appellant was divorced and had one adult son. In the report, the appellant said he dropped out of high school after completing the tenth grade but obtained his GED in 1972. The appellant attended technical school and obtained his electrical wiring certificate in 1983. The report shows that from 1994 to 2006, he worked as a security guard, a maintenance technician, and a glass installer. Since 2006, the appellant had been unemployed and receiving Social Security disability payments for his medical condition. In the report, the appellant stated that he had been consuming alcohol since he was eighteen and that he had never attended a program for mental health or alcohol treatment. The appellant said in the report that he usually consumed a twelve-pack of beer on weekends, that he became intoxicated sometimes, and that he did not consider himself to be an alcoholic. According to the report, the appellant has three prior convictions for driving on a suspended license, three prior convictions for driving under the influence (DUI), and one prior conviction for misdemeanor larceny. The report also states that the appellant has two prior convictions in Mississippi, one for DUI and one for driving on a suspended license. He has had a probation sentence revoked previously.

The trial court stated that it had "great sympathy" for the appellant but that he had committed a "horrible crime." The trial court stated that it had read the appellant's

presentence report and that "all the way back to 1973 you could predict that this man was headed to where he's sitting now. . . . You could predict it in 1973 ultimately he's going to hit the big time." The court said that although the appellant was sick, "that's just not good enough" and did not excuse his taking the victim's life. The trial court concluded, "This is not a proper case for probation any way you look at this. There's no way to cut it."

## II. Analysis

The appellant argues that the trial court erred by denying his request for alternative sentencing because his medical condition and his problem with alcohol result in his having "special needs." The State contends that the trial court properly ordered the appellant to serve his sentence in confinement. We agree with the State.

Appellate review of the length, range or manner of service of a sentence is de novo. See Tenn. Code Ann. § 40-35-401(d). In conducting its de novo review, this court considers the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement by the appellant in his own behalf; and (8) the potential for rehabilitation or treatment. See Tenn. Code Ann. §§ 40-35-102, -103, -210 (2006); see also State v. Ashby, 823 S.W.2d 166, 168 (Tenn. 1991). The burden is on the appellant to demonstrate the impropriety of his sentence. See Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments. Moreover, if the record reveals that the trial court adequately considered sentencing principles and all relevant facts and circumstances, this court will accord the trial court's determinations a presumption of correctness. Id. at (d); Ashby, 823 S.W.2d at 169.

An appellant is eligible for alternative sentencing if the sentence actually imposed is ten years or less. See Tenn. Code Ann. § 40-35-303(a). The appellant's sentence meets this criteria. Moreover, an appellant who is an especially mitigated or standard offender convicted of a Class C, D, or E felony should be considered a favorable candidate for alternative sentencing absent evidence to the contrary. See Tenn. Code Ann. § 40-35-102(6). The following sentencing considerations, set forth in Tennessee Code Annotated section 40-35-103(1), may constitute "evidence to the contrary":

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

State v. Zeolia, 928 S.W.2d 457, 461 (Tenn. Crim. App. 1996). Additionally, a court should consider the defendant's potential or lack of potential for rehabilitation when determining if an alternative sentence would be appropriate. See Tenn. Code Ann. § 40-35-103(5).

In the instant case, the appellant is a Range I, standard offender convicted of a Class B felony; therefore, he is not considered to be a favorable candidate for alternative sentencing. However, the length of his sentence is ten years, rendering him eligible for alternative sentencing. The Community Corrections Act provides an alternative means of punishment for "selected, nonviolent felony offenders in front-end community based alternatives to incarceration." Tenn. Code Ann. § 40-36-103(1). However, vehicular homicide does not qualify as a "non-violent felony offense." See State v. Braden, 867 S.W.2d 750, 765 (Tenn. Crim. App. 1993) (citing State v. Robert Glen Grissom III, No. 02-C-01-9204-CC-00076, 1993 Tenn. Crim. App. LEXIS 142, **16-17 (Jackson, Mar. 10, 1993)). Therefore, a person convicted of vehicular homicide generally is not eligible for community corrections. Nevertheless, a defendant convicted of a violent offense may be eligible for a community corrections sentence if he or she is a person "who would be usually considered unfit for probation due to histories of chronic alcohol or drug abuse or mental health problems, but whose special needs are treatable and could be served best in the community rather than in a correctional institution." Tenn. Code Ann. § 40-36-106(c).

As noted by the trial court, the appellant has been committing crimes, in particular driving under the influence and driving on a suspended license, since he was a young man. Moreover, confinement is necessary to avoid depreciating the seriousness of the offense. When imposing confinement based upon the seriousness of the offense, the trial court must first determine if "'the circumstances of the offense[s] as committed [are] especially violent, horrifying, shocking, reprehensible, offensive, or otherwise of an excessive or exaggerated degree.'" Zeolia, 928 S.W.2d at 462 (quoting State v. Bingham, 910 S.W.2d 448, 454 (Tenn. Crim. App. 1995)). The trial court found this case to be "horrible." We agree. Despite numerous DUI convictions, the appellant has not sought treatment for his addiction to alcohol. On the afternoon of September 20, 2008, he again was driving while under the influence and killed the victim. A blood test shows that appellant's blood alcohol was greater than .20. The appellant's failure to seek treatment for thirty-four years ultimately

resulted in the victim's death. In our view, the facts of this case are shocking and reprehensible and demonstrate that measures less restrictive than confinement have frequently been applied unsuccessfully to the appellant. Finally, despite his prior convictions and the victim's death, the appellant still refuses to acknowledge that he is an alcoholic, indicating that he has little to no potential for rehabilitation and that his addiction to alcohol is not treatable in the community. While we sympathize with the appellant's medical condition, we conclude that the trial court properly denied his request for alternative sentencing.

## III. Conclusion

Based upon the record and the parties' briefs, we affirm the judgment of the trial court.

_____
NORMA McGEE OGLE, JUDGE