IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT NASHVILLE

AUGUST 1998 SESSION



**FILED**

**September 22, 1998**

**Cecil W. Crowson**
**Appellate Court Clerk**

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | C.C.A. No. 01C01-9712-CR-00579 |
| Appellee, | ) | |
| | ) | Putnam County |
| v. | ) | |
| | ) | Honorable Leon Burns, Jr., Judge |
| MARK A. CASH, | ) | |
| | ) | (Sentencing) |
| Appellant. | ) | |

FOR THE APPELLANT:

Lionel R. Barrett, Jr.
Washington Square Two - Suite 418
222 Second Avenue, North
Nashville, TN 37201

FOR THE APPELLEE:

John Knox Walkup
Attorney General & Reporter
425 Fifth Avenue, North
Nashville, TN 37243-0493

Timothy Behan
Assistant Attorney General
425 Fifth Avenue, North
Nashville, TN 37243-0493

William Edward Gibson
District Attorney General
145 South Jefferson Avenue
Cookeville, TN 38501-3424

Shawn C. Fry
Assistant District Attorney General
145 South Jefferson Avenue
Cookeville, TN 38501-3424

OPINION FILED: _____

AFFIRMED

L. T. LAFFERTY, SPECIAL JUDGE

# **OPINION**

The defendant, Mark A. Cash, entered guilty pleas to nine counts of incest. An aggravated rape count was dismissed. As part of the plea agreement, the defendant agreed for the trial court to run counts two through five concurrently and counts six through ten concurrently, but consecutively to counts two through five. The trial court imposed sentences of five years for each conviction for an effective sentence of ten years.

In this appeal of right, the defendant presents two issues: (1) whether the trial court erred in not granting some form of alternative sentencing, and (2) whether the trial court erred in not imposing a sentence of six to eight years. We affirm the judgment of the trial court.

## **SENTENCING HEARING**

The victim, S.R.,[1] testified her stepfather, the defendant, had sex with her in August, 1994. The victim testified she had returned from vacation bible school in the evening. Her mother was working at O'Charlie's at the time of this occurrence. The defendant had put the victim's two sisters, ages 6 and 10, to bed.

The defendant returned to the living room, where the victim was watching TV. The defendant removed his clothes and told the victim to take hers off. The victim stated, "He told me I had to, so I did." The victim testified they had sex on the living room floor.

The victim was unsure if the defendant ejaculated on this occasion, but he had done so before on other occasions. Overall, the victim testified she and her stepfather had sex about ten or eleven times, and denied she told the Department of Human Services (DHS) they had sex only three times.

---

[1]In order to protect the identity of minor victims of sexual abuse, it is the policy of this Court to refer to the victims by their initials. *See State v. Schimpf*, 782 S.W.2d 186, 188, n.1 (Tenn. Crim. App. 1989).

Mrs. Cindy Cash, mother of S.R., testified she married the defendant in October, 1985 and they had two children. Mrs. Cash testified that her daughter was slow and had a learning disability. S.R. attended special education classes. Mrs. Cash testified her husband had an alcohol and drug abuse problem and four prior DUI convictions. She had also charged him with assault on numerous occasions. The defendant failed to comply with his previous conditions of probation. Since the wife and defendant's separation in May, 1995, the defendant has had little contact with his two daughters.

Tim Cook, Progressive Sentencing, testified he supervised the defendant while on probation. The defendant had been convicted of DUI and driving on a revoked license. Mr. Cook testified the defendant reported as required, but failed to pay his court costs, for which a violation warrant was issued. The defendant failed to pay any costs from April, 1996 to the date of the sentencing hearing, June, 1997. Mr. Cook testified he could not confirm or deny whether the defendant had completed 200 hours of community service as a condition of probation.

Jay Colton, employee of the Department of Correction, testified he was the defendant's supervisor in 1988, when the defendant was placed on pretrial diversion. When asked how the defendant did on pretrial diversion, Mr. Colton stated, "He didn't do very well at all." Mr. Colton testified his biggest problem with the defendant was the defendant's laziness. The defendant would not work, report, or do his community service until pushed to do so. The defendant's pretrial diversion was terminated due to violations. Mr. Colton was not aware of any alcohol problems the defendant had until the sentencing hearing.

At the sentencing hearing, the defendant testified he was 35 years old and was presently living in Nashville. After dropping out of high school in the eleventh grade, the defendant obtained a GED. Also, the defendant received an honorable discharge from the U.S. Coast Guard. At the age of 13, the defendant's parents divorced and he was raised by his mother in Atlanta, Georgia.

As to the use of alcohol, the defendant testified alcoholism runs heavy in his family and "it's just been very devastating." Prior to these offenses, the defendant was a part-time entertainer in country music and worked in various restaurants and night clubs. The defendant was employed up until two weeks before the sentencing hearing. After being arrested on these charges, the defendant entered an alcohol treatment program at Cumberland Heights in Nashville. After four days, the defendant was flown to Father Martin's Ashley Treatment Center in Baltimore, Maryland. The defendant underwent a 33-day intensive treatment in a program similar to the Betty Ford Treatment Center in California. In response to a question about the center in Baltimore, the defendant stated:

> They specialize in people that just can't stay sober. They specialize—I could always stay sober maybe 90 days, four months, and then would relapse and continue drinking. And they, they specialize in finding out why that happens and went into areas of my life that have not been dealt with before.

Although not a defense, the defendant testified that alcohol and drugs were responsible for his situation with his stepdaughter. The defendant testified he was attending Alcoholics Anonymous meetings once a day, sometimes twice a day. He further testified he wanted to restore his relationship with his family and expressed remorse to the victim and her family for any pain he caused.

Tommy Cash, father of the defendant, testified that he is a professional entertainer and licensed realtor. Mr. Cash testified he became aware of his son's drinking problem when his son moved to Atlanta with his mother, after their divorce. Mr. Cash described his son's abuse of alcohol as "the worst I've ever seen." Mr. Cash advised the trial court he has been a recovering alcoholic for the past ten years. Also, Mr. Cash described Father Martin's Treatment Center as one of the best in the nation. Mr. Cash testified his son stayed sober and clean for almost a year after treatment. Although his son did relapse, he bounced back. Mr. Cash advised the trial court he would work with his son regardless of the outcome.

Mr. Johnny Moore, a family friend, testified that in his opinion, if the defendant was

4

given the opportunity, he could really shine in the music world. Also, Mr. Moore was aware of the defendant's many DUI convictions.

The presentence report, a letter from Father Martin's Ashley Center, an evaluation of the victim by the DHS, and a psychological report of Vanderbilt University on the victim were submitted to the trial court for consideration. Based upon this evidence, the trial court imposed sentences of five years for each offense and, as part of the plea agreement, ran five counts consecutively and denied any alternative relief.

## MANNER OF SERVICE

When a defendant complains of the imposition of his or her sentence, we must conduct a *de novo* review with a presumption of correctness. Tenn. Code Ann. 40-35-401(d). Therefore, the burden of showing that the sentence is improper is upon the appealing party. *Id.* The presumption that determinations made by the trial court are correct is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances. *State v. Ashby,* 823 S.W.2d 166 (Tenn. 1991); *State v. Smith,* 898 S.W.2d 742 (Tenn. Crim. App. 1994).

If appellate review reflects the trial court properly considered all relevant facts and its findings of fact are adequately supported by the record, this Court must affirm the sentence "even if we would have preferred a different result." *State v. Fletcher,* 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). In arriving at the proper determination of an appropriate sentence, the trial court must consider: (1) the evidence, if any, received at the guilty plea and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statements the defendant wishes to make in the defendant's behalf about the sentencing; and (7) the potential for rehabilitation and

treatment. Tenn. Code Ann. § 40-35-210(a) and (b); Tenn. Code Ann. § 40-35-103(5); *State v. Holland,* 860 S.W.2d 53, 60 (Tenn. Crim. App. 1993).

The record in this case demonstrates the trial court made adequate findings of fact. We, therefore, conduct a review of these facts with a presumption of correctness. At the sentencing hearing, the trial court found the defendant had a history of criminal convictions and a history of criminal behavior. These convictions consisted of four driving under the influence of alcohol and several assaults on his wife. Tenn. Code Ann. § 40-35-114(1). The trial court considered this factor to be important. In addition, the trial court found that the defendant abused the position of a private trust. Tenn. Code. Ann. § 40-35-114(15). The trial court stated, "I can't think of any other position that would be more appropriate for a position of private trust where a mother leaves the child or children with the step-father as she goes and earns a living for the family. So I think that is certainly an important factor, and it was abused in this case." Also, the trial court gave limited weight to the enhancement factors of vulnerability and gratification, due to the number of offenses. Tenn. Code Ann. § 40-35-114(4) and (7).

In assessing the appropriate sentences, the trial court also considered the mitigating factors submitted by the defendant. Tenn. Code Ann. § 40-35-113; Tenn. Code Ann. § 40-35-210. As to the mitigating factor that the defendant's conduct neither caused nor threatened bodily injury, the trial court gave little weight to this factor. As to the mitigating factor of previous counseling, the trial court was not impressed. The trial court found that the defendant had failed to respond to counseling for his multiple DUI convictions, which was during the commission of many of these offenses. In addition, the trial court found that remorse should be given little weight. Therefore, the trial court assessed sentences of five years for each offense as the appropriate sentence. We affirm the trial court's judgment as to the period of confinement for each offense.

**DENIAL OF ALTERNATIVE SENTENCE**

6

The defendant argues that community corrections with the condition of alcohol treatment would be the most appropriate sentence. In addition, the defendant submits he was eligible for probation for each of these offenses, including the possibility of split confinement. The State contends the defendant is not worthy of any alternative sentence.

In its ruling, the trial court held:

> The Court does not believe that it would be appropriate for a Community Corrections sentence to be given. That being an offense against persons, Community Corrections would be inappropriate unless there is some showing that he fits some special need, and under the circumstances I see none and could not grant that.

Since the defendant entered a plea of guilty to incest, a Class C felony, ordinarily the defendant would be presumed to be a favorable candidate for probation or an alternative sentence, in the absence of evidence to the contrary. Tenn. Code. Ann. § 40-35-102(6). However, the record of the sentencing hearing establishes the defendant, at the entry of the guilty pleas, would receive some consecutive sentences, to be determined by the trial court. Since the range of punishment for Class C felonies, Range I, is three to six years, there is a legitimate question if the defendant would be eligible for probation for a total sentence of ten years. The defendant's application for community corrections was the defendant's only viable option. Thus, the defendant has the burden of establishing that he is a favorable candidate for alternative relief.

Those defendants, who are convicted of violent felony offenses and those convicted of felony offenses involving offenses against the person, are normally statutorily excluded from community corrections sentences. *State v. Braden,* 867 S.W.2d 750 (Tenn. Crim. App.), per. app. denied (Tenn. 1993); *State v. Birge,* 792 S.W.2d 723 (Tenn. Crim. App.), per. app. denied (Tenn. 1990). Since violent offenders are not statutorily eligible for community corrections, Section (c) of Tenn. Code Ann. § 40-36-106, however, provides as follows:

> Felony offenders not otherwise eligible under subsection (a), and who would be usually considered unfit for probation due

7

to histories of chronic alcohol, drug abuse, or mental health problems, but whose special needs are treatable and could be served best in the community rather than in a correctional institution, may be considered eligible for punishment in the community under the provisions of this chapter.

A trial court, in its determination for placing a defendant in the community corrections program under Section (c), must consider: (1) the offender has a history of chronic alcohol, drug abuse, or mental health problems; (2) these factors were reasonably related to and contributed to the offender's criminal conduct; (3) the identifiable special need (or needs) are treatable; and (4) the treatment of the special need could be served best in the community rather than in a correctional institution. *State v. Boston,* 938 S.W.2d 435, 439 (Tenn. Crim. App. 1996).

Although the trial court did not specifically address this criteria in denying community corrections, the trial court did articulate in the record its reasons for denying community corrections. Our analysis of the record supports the trial court's findings. As the trial court pointed out, a charge of aggravated rape, alleged to have occurred in 1990 involving the same victim, was dismissed. The trial court found the number of acts of incest between February, 1992 and July, 1995 was quite extensive. As a result of four DUI convictions, the defendant had been given many opportunities to seek and benefit from alcohol treatment. Also, the defendant committed many of these offenses during periods of probation. The defendant was given opportunities to be on probation (including pretrial diversion) and failed to comply with the conditions of probation. We affirm the trial court's

judgment.

_____
L. T. LAFFERTY, SPECIAL JUDGE


CONCUR:


_____
JOHN H. PEAY, JUDGE


_____
THOMAS T. WOODALL, JUDGE